(C. D. 1064)

## GEO. S. BUSH & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 17, 1947)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Chas. J. Evans* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil* and *Sybil Phillips,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of Seattle, to recover additional duty assessed at the rate of 10 per centum ad valorem under the provisions of section 304 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, on the ground that the merchandise was not legally marked under customs supervision.

The merchandise consists of watch movements, cases, and dials, assembled, imported from Switzerland. The protest claims that the articles were legally marked under customs supervision. It is further claimed in plaintiff's brief that section 304 is not applicable to imported watch movements, cases, and dials, the marking of such articles being specially provided for in paragraph 367.

The pertinent provisions of the tariff act are as follows:

SEC. 304 [as amended by the Customs Administrative Act of 1938]

(a) Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the

nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. * * *

* * * * * * *

(c) If at the time of importation any article (or its container, as provided in subsection (b) hereof) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) hereof) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties. The compensation and expenses of customs officers and employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty provided for in this subsection shall be reimbursed to the Government by the importer.

Par. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

* * * * * * *

(b) All the foregoing shall have cut, engraved, or die sunk, conspicuously and indelibly on one or more of the top plates or bridges: The name of the country of manufacture; the name of the manufacturer or purchaser; in words and in Arabic numerals the number of jewels, if any, serving a mechanical purpose as frictional bearings; and, in words and in Arabic numerals, the number and classes of adjustments, or, if unadjusted, the word "unadjusted".

* * * * * * *

(e) * * * Dials for any of the movements, mechanisms, devices, or instruments provided for in this paragraph, whether or not attached thereto, shall have stamped, cut, engraved, or die sunk, conspicuously and indelibly thereon the name of the country of manufacture; which marking, if the dial is imported attached to any of the foregoing movements, mechanisms, devices, or instruments, shall be placed on the face of the dial in such manner as not to be obscured by any part of the case, container, or housing.

* * * * * * *

(g) Any of the foregoing cases, containers, or housings, shall have cut, engraved, or die sunk, conspicuously and indelibly on the inside of the back cover, the name in full of the manufacturer or purchaser and the name of the country of manufacture.

* * * * * * *

(j) An article required by this paragraph to be marked shall be denied entry unless marked in exact conformity with the requirements of this paragraph.

At the trial plaintiff called Victor D. Harlowe, secretary-treasurer of Geo. S. Bush & Co., customs brokers. He testified that his firm

acted as customs brokers in Seattle for Frederick & Nelson, the importers herein; that in connection with the entry he received a notice from the customs officials that the goods were not properly marked; that he made application to the collector for authority to transfer them to two firms, Kirk-Rich Dial Co. and Alvin Hankins for marking of the movements and the cases; that thereafter Frederick & Nelson informed him that 138 of the 150 watches had been marked; that he arranged to have an inspector examine the marking; that 12 of the watches could not be opened to be marked and were returned to the customs officials; that subsequently he obtained their release again for marking purposes; that the watches came back to him after they had been marked; and that he took them over to Mr. McNeill, the deputy collector, for inspection. On cross-examination Mr. Harlowe stated that he did not personally send the watches to Kirk-Rich or Alvin Hankins; that he was not present when they were being marked; that he saw only the 12 watches after they had been marked, not the 138; and that he identified the 12 marked watches with the imported watches by comparing the numbers on the watches with the numbers on the invoice.

Katherine Nirk, traffic manager of Frederick & Nelson, testified that she had called Kirk-Rich Co. and arranged for the dial marking of the watches; that Kirk-Rich and Alvin Hankins were paid for their work in marking the watches; and that she made arrangements through the customs broker for the inspection by customs officials of the 138 watches at the office of Frederick & Nelson.

John A. McNeill, deputy collector, testified that he had been advised by the acting appraiser that the watches were not legally marked when imported; that he issued the blue memorandum attached to customs Form 4647 in regard to the marking required by paragraph 367 for watches; that he looked at the 12 watches which Mr. Harlowe returned to him after they had been marked; that they were marked to indicate the country of origin, Switzerland; that he then released the watches to Mr. Harlowe; that he gave instructions to the inspector as to how each watch should be marked; that the requirements specified were the requirements in paragraph 367, with the exception of the name of the country of origin; that he did not institute any proceedings for forfeiture under paragraph 367. On cross-examination he stated that he did not personally see the watches when they were being marked; that he did not know whether the 12 watches which were returned to him marked with the name of the country of origin were the same watches but that they had every appearance of being the same; that he issued no instructions for any inspector to attend the marking of the 12 watches; and that the only notice received from the importer concerning the marking of the watches was the state-

ment on Form 4647 that the merchandise would be ready for marking on August 22.

Plaintiff then called Adrian H. Koons, deputy collector, who testified that he made the report attached to Form 4647. Mr. Koons' report was then offered in evidence as plaintiff's exhibit 2. Mr. Koons stated that he personally inspected the 138 watches on the premises of Frederick & Nelson; that he found that they were marked to indicate the country of origin; that he examined approximately 20 or 25 of the 138 watches; that he was not present at the time the watches were being marked; that no one acting under his direction or supervision was present when the watches were being marked; that he did not see the 12 watches after they had been marked; that he considered the watches he examined to be representative of the entire shipment; that in order to inspect the watches it was necessary for the backs to be unscrewed; that all the marks were on the inside; and that the dials were also marked.

The report of Mr. Koons (plaintiff's exhibit 2) contains the following statement:

One hundred thirty-eight (138) watches (movements, cases and dials), said to be covered by C. E. 1823, were exhibited to me this date at Frederick and Nelson Co., 5th Avenue and Pine St., Seattle, Washington. The above merchandise was marked in accordance with the attached memorandum from Dep. Col. J. H. McNeill and was not marked under customs supervision.

It is apparent from the record that the watches were not marked in the presence or under the direction of any customs official, but that a representative portion was thereafter inspected and found to have been marked with the name of the country of origin. Since the merchandise was released to the importer, it may be inferred that the articles were marked in conformity with the requirements of paragraph 367.

Plaintiff claims, however, that the marking was done under "customs supervision," since the customs officials inspected the articles to see if they were properly marked. Webster's New International Dictionary gives the following definitions of "supervision" and "supervise":

supervision. 1. Act or occupation of supervising; inspection; oversight; * . * *
supervise. * * * 2. To oversee for direction; to superintend; to inspect with authority; * * *

Plaintiff argues that inspection of the article after marking is sufficient compliance with the statute. However, section 304 (c) provides that such marking is to be accomplished under customs supervision, indicating that there must be oversight or inspection of the marking process itself, not merely the results. This is borne out further by the provision that the compensation of customs employees

assigned to supervise the marking of articles shall be reimbursed to the Government by the importer. See also section 11.8 (*m*) of the Customs Regulations of 1943, as amended, which provides:

(*m*) The compensation of customs officers and employees assigned to supervise the exportation, destruction, or marking of articles so as to exempt them from the application of marking duties shall be computed in accordance with section 19.5 (c) of these regulations, except to the extent that such supervision is performed by a customs officer or employee in an overtime status, in which case the compensation with respect to the overtime shall be computed in accordance with section 24.16 of these regulations. The time for which compensation is charged shall include all periods devoted to supervision and all periods during which such officers or employees are away from their regular posts of duty by reason of such assignment and for which compensation to such officers and employees is provided for by law. In formulating charges for expenses pertaining to such supervision, there shall be included all expenses of transportation, per diem allowance in lieu of subsistence, and all other expenses incurred by such officers and employees by reason of such supervision. * * *

What is contemplated by the term "customs supervision" is oversight of an action—exportation, destruction, or marking—which may require an employee to be absent from his regular post of duty for some time, not an inspection which could take place in a comparatively short time at the appraiser's stores.

In the instant case, therefore, the marking was not done under customs supervision as provided for in section 304 (c) of the Tariff Act of 1930, as amended.

Plaintiff argues, however, that section 304 does not apply to watch movements, cases, and dials because of the special marking provisions in paragraph 367. Subsection (j) of that paragraph provides that the articles mentioned therein shall be denied entry unless marked in accordance with the information specified, including country of manufacture, while section 304 provides for an additional duty of 10 per centum when articles have not been marked so as to indicate the country of origin. We do not think these provisions are mutually exclusive. Paragraph 367 uses the term "country of manufacture" rather than "country of origin," but these terms are ordinarily synonymous. See section 11.8 (*c*) of the Customs Regulations of 1943. Otherwise the provisions of paragraph 367 describe the particular manner of marking watch movements, cases, and dials, and require additional information to be noted thereon.

In *Bernard, Judae & Co.* v. *United States*, 54 Treas. Dec. 243, T. D. 42991, appeal dismissed, 16 Ct. Cust. Appls. 578, T. D. 43335, watch cases and movements were not marked with the name of the country of origin and the collector assessed an additional duty of 10 per centum under paragraph 304 of the Tariff Act of 1922. The attorneys for the importer contended that paragraph 367 did not

impose additional duty for failure to mark and that the requirements of section 304 were satisfied as all the dials had the name of the country of origin marked thereon. It was held that the cases and movements were "articles" within the meaning of section 304 and that it was mandatory upon the collector to assess the additional duty for failure to mark them.

*Holtzerman Chicago Store Co.* v. *United States*, 44 Treas. Dec. 380, T. D. 39927, cited by plaintiff does not hold to the contrary. Paragraph 368 of the Tariff Act of 1922 provided that clocks and clock movements should contain certain markings "when imported" and it was held that if they were not so marked they could not be delivered and that the provision in section 304 permitting the delivery of merchandise after marking upon the payment of 10 per centum additional duty did not apply. The general provision in so far as it related to the delivery of the merchandise after marking had to yield to the special requirement that clocks which were unmarked when imported could not be delivered.

No such situation exists in the instant case. Both provisions permitted marking after importation and one required that the name of the country of manufacture and the other that the name of the country of origin be placed on the articles. Therefore, the additional duty provided by section 304 (c) must be imposed where the marking was not done in conformity with the requirements of that section.

Moreover, we do not think the protest herein is sufficient to raise the issue that compliance with paragraph 367 is enough to avoid the additional duty of 10 per centum provided in section 304. The protest refers only to section 304 (c) of the Tariff Act of 1930 and claims that the articles were legally marked under customs supervision. While no technical precision is required in a protest, it must notify the collector of the nature of the claim so that he may have an opportunity to correct his mistake. *Davies* v. *Arthur*, 96 U. S. 148. In the instant case the collector could not know from an allegation of conformity with the requirements of section 304 that the plaintiff contemplated a claim of the inapplicability of that section.

In *American Mail Line, Ltd.* v. *United States*, 34 C. C. P. A. 1, C. A. D. 335, it was held that a protest claiming that the articles and repairs assessed did not fall within the meaning of the term "equipment and repairs" was not sufficient to raise the claim that the vessel was not the type of ship for which repairs were made dutiable. Similarly, in the instant case, the claim in the protest is that the watches were marked in conformity with section 304, not that they were not the type of articles which were required to be marked under that section.

For the reasons above stated, the protest is overruled. Judgment will be rendered accordingly.