BEFORE THE THIRD DIVISION, FEBRUARY 19, 1948

**No. 52193.**—R. Haber Linen Import Co. *v.* United States, protest 111622–K (Los Angeles).

CLINE, Judge: This is a suit against the United States, arising at the port of Los Angeles, to recover additional duty assessed at the rate of 10 percent ad valorem under the provisions of section 304 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

The merchandise consists of cotton napkins and handkerchiefs imported from Mexico. The protest claims that "no marking penalty should be assessed as the merchandise was properly marked with the country of origin."

At the trial plaintiff called William Edwin Mann, who acted as customs broker for the importer. He testified that at the time the merchandise was imported and examined by the appraiser, it was found to be not legally marked; that there were seven bales, four of which were released upon payment of duty; that when it was found that the goods were not legally marked, application was made to transfer the three bales in the appraiser's stores to the importer's premises for marking; that before that was done, the four cases had been marked; that he had received the marking notice issued by the customs officials and had turned it over to Mr. Haber; that when the marking was completed, the witness so notified the customs office and requested that an inspector go to the importer's store and

release the shipment. On cross-examination, the witness stated that the goods had no markings upon importation; that they were marked in Mr. Haber's store-room; that no customs inspector was present; that a customs inspector was there after all seven cases had been marked.

Raymond Haber, part owner of the importing company, testified that each package containing a dozen articles was marked "Made in Mexico," but that the individual articles were not marked; that after he received the merchandise he had small labels printed "Made in Mexico" and put them on each individual handkerchief and napkin; that it took about 3 weeks to mark them; that none were sold prior to their being marked; that someone from the customs office, whose name he did not recall, came to examine the merchandise after it had been marked; that he showed the inspector the goods, told him it was all marked and asked him to "O. K." it when he got back to the office; that he did not recall ever having received a signed return from the inspector showing the release of the shipment

Defendant called Samuel C. Wilson, deputy collector of customs at Los Angeles. He testified from the official papers that the merchandise was not marked at the time of importation; that the importer was so notified; that thereafter the importer applied to the collector's office for the transfer of the three packages in customs custody to his premises for marking; that the application was approved and the original copy of the marking notice on customs Form 4647 was delivered to the collector's office; that there was no record of an inspector having been sent to the importer's premises either in the collector's office or in the cashier's office "where ordinarily when an inspector is assigned to marking jobs it is reimbursable, and a charge is made against the importers"; that the record did not indicate that the importer had apprised him that the marking was completed and ready for inspection; that customarily after the importer notifies him that the merchandise has been marked, he assigns an inspector to go to the premises; that if the marking is sufficient and legal, he so reports on the blanks provided on customs Form 4647; that at that time a duplicate of that form is endorsed and issued to the broker or importer; that there is nothing in the record in the instant case to indicate that the collector's office was notified or that an inspector was ever sent to make the examination.

There were admitted into evidence the letter from the broker to the collector making application for the transfer of the packages in the appraiser's stores to the importer's premises for marking (defendant's exhibit 1) and the original notice of marking on customs Form 4647 (defendant's exhibit 2). On the back of the latter is a statement signed by the importing company that the merchandise would be ready to be marked on May 18, 1942. However, the certification at the bottom of the sheet that the merchandise has been legally marked has not been filled in or signed by any customs officer or employee, nor has plaintiff produced any copy of customs Form 4647 endorsed by any customs employee.

Plaintiff claims that the merchandise herein is not subject to the additional duty provided for in section 304 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. The pertinent portions of said section provide:

(c) ADDITIONAL DUTIES FOR FAILURE TO MARK.—If at the time of importation any article * * * is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article * * * marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem * * *. The compensation and expenses of customs officers and

employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty provided for in this subsection shall be reimbursed to the Government by the importer.

It is plaintiff's contention that the merchandise herein was properly marked in accordance with the above-quoted provisions.

It is apparent from the evidence that the merchandise herein was not legally marked when it was imported. According to the uncontradicted testimony of the importer and the broker, the merchandise was marked thereafter. The evidence is conflicting, however, as to whether a customs inspector called and examined the goods. There is no official record of this having been done. But whether or not an inspection was made, it is clear that the marking was not done under customs *supervision*. The term "customs supervision" as used in section 304 (c) of the tariff act, *supra*, contemplates the oversight of the marking process by a customs employee, not merely the inspection of the merchandise after it has been marked. See *Geo. S. Bush & Co., Inc.* v. *United States*, 19 Cust. Ct. 37, C. D. 1064.

We hold therefore, that the merchandise herein was not legally marked in accordance with the provisions of section 304 (c) of the Tariff Act of 1930, as amended by Customs Administrative Act of 1938. The protest is overruled and judgment will be rendered accordingly.