(C.D. 2821)

SILVINE IMPORTERS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 14, 1966)

*Leonard A. Green* for the plaintiff.

*Barefoot Sanders,* Assistant Attorney General (*Charles P. Deem* and *Sheila N. Ziff,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise covered by the instant protest consists of electric brewmasters, some of which were imported with electric cords and plugs, others without.

These brewmasters are earthenware or porcelain pots with covers and contain electrical heating elements. They are used for the purpose of heating water and other liquids.

The brewmasters without cords, covered by entry 13514, were classified as household articles wholly or in chief value of other base metal and assessed with duty at 17 per centum ad valorem under paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. They were also assessed with a copper tax at the rate of 0.32 cent per pound under section 4541(3) of the Internal Revenue Code, as modified by the sixth protocol, *supra*.

The brewmasters with cords were classified as entireties and similarly assessed with duty and copper tax.

The applicable statutes read as follows:

Internal Revenue Code. Section 4541:

IMPOSITION OF TAX

In addition to any other tax or duty imposed by law, there is hereby imposed upon the following articles, imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates specified. For the purpose of such tax, the term "United States" includes Puerto Rico.

Section 4541(3), as modified by T.D. 54108, *supra:*

All articles dutiable under the Tariff Act of 1930, not provided for in either of the two preceding items, containing 4 percent or more of copper by weight_____ 1¼% ad val. or 0.32¢ per lb. whichever is the lower.

Tariff Act of 1930:

Paragraph 339, as modified by T.D. 54108, *supra:*

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

   *       *       *       *       *       *       *

Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

   *       *       *       *       *       *       *

Other base metal:

   *       *       *       *       *       *       *

Other _____ 17% ad val.

364

Paragraph 316(a), as modified by T.D. 54108:

Telegraph, telephone, and other wires and cables composed of iron, steel, or other metal (except gold, silver, platinum, tungsten, or molybdenum), covered with or composed in part of cotton, jute, silk, enamel, lacquer, rubber, paper, compound, or other material, with or without metal covering_____ 15% ad val.

A preliminary objection has been raised by the defendant as to the adequacy of the protest. The objection is that the issue of entireties was not brought to the attention of the collector by the language of the protest wherein it is stated, "* * * weight used for figuring copper tax incorrect." As will be seen later, the treatment of the brewmaster and cord as an entirety makes a significant difference in the computation of the copper tax.

The statutory and decisional standards established for the clarity and sufficiency of protests are firm but not rigorous. Section 514 of the Tariff Act of 1930 provides that the importer, in his protest, give a distinct and specific reason for objecting to the collector's classification. Generally, the instances in which protests have been found inadequate to meet the statutory requirement have been those in which the language gave no indication of the claim later advanced on trial. Thus, in the case of *Davies* v. *Arthur*, 96 U.S. 148, the Supreme Court disallowed a claim for classification of the subject articles as manufactures of silk when the plaintiff had sought only classification as wearing apparel in his protest. Similarly, a party was not permitted to seek classification under a paragraph not mentioned in his protest, *United States* v. *Sheldon Co.*, 5 Ct. Cust. Appls. 427, T.D. 34946; nor to deny the applicability of a section after alleging conformity with it, *Geo. S. Bush & Co., Inc.* v. *United States*, 19 Cust. Ct. 37, C.D. 1064; nor to draw the attention of the collector to a specific issue and then on trial to raise another issue, even under the same section, *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335.

In sum, the protests which have been disqualified are those which provide no information to the collector or actually mislead him. Such is not the case here. The collector has been given notice that his manner of computing the copper tax is being questioned. The fact that the thrust of the objection goes to the treatment of the brewmaster and cord as an entirety and not to the accuracy of the scales or some other irregularity of measurement does not detract from the effectiveness of the protest. If unwarranted, the weighing of both articles resulted in a figure which was, for the purpose of computing the copper tax, incorrect. Therefore, a protest directed at the weight used for figuring the copper tax brings into issue here the technique used in arriving at that weight. The question of entireties was, consequently,

implicit in the protest and should have engaged the attention of the collector.

Before turning to a full discussion of the issue of entireties, we take note of plaintiff's additional claim that the electric cord is classifiable under paragraph 316(a) of the Tariff Act of 1930, as modified by T.D. 54108, *supra*, presumably as covered wire. No argument is advanced in support of this contention nor, indeed, do we consider it supportable. The electric cord is clearly advanced beyond the stage of a covered wire. With plugs on each end and ready for use with the brewmaster or other appliances these cords have acquired a different name, character, and purpose. They are no longer the basic wire provided for in paragraph 316(a). *United States* v. *Bache & Co.*, 7 Ct. Cust. Appls. 445, T.D. 37011. *Boye Needle Co.* v. *United States*, 5 Ct. Cust. Appls. 43, T.D. 34009. In view, however, of our disposition of other phases of this case, no further consideration need here be given to the *per se* classification of the subject electric cords.

Turning now to the merits of the case, Mr. Harry Silver, the general manager of Silvine Importers, Inc., testified on its behalf, to the following effect: Before entering the importing business, he worked as a design engineer for the Bendix Aviation Co. and the National Advisory Committee for Aeronautics. Mr. Silver designed the brewmasters and cords in question for manufacture in Japan and subsequent importation.

According to the witness, the cord in question was designed not only to fit the brewmaster but to correspond closely to a type of cord in widespread use in the United States. That is to say, it has a half inch spacing on the male end to fit American outlets. The female end of the cord conforms in dimensions to the standard American cord assembly. This, testified the witness, makes the cord in question useful as an extension cord or in conjunction with coffee makers, hot plates, and hot trays.

Plaintiff's collective illustrative exhibit 1 was a brewmaster and cord typical of the components assessed as an entirety by the collector. Plaintiff's exhibit 2 was a brewmaster without a cord representing the merchandise lacking cords in entry 13514.

Plaintiff's exhibits 3 and 4 were examples of domestic cords similar to the importation. Mr. Silver testified that the domestic cords were generally available in the United States and could be used in the brewmaster in place of the imported cord.

It was agreed between counsel for the parties that the brewmasters entered without cords have less than 4 percent copper by weight; that the same is true of the brewmasters entered with cords; that the cords contain more than 4 percent copper by weight; and that the copper content of the brewmaster and cord weighed together is more than 4 percent of the total weight.

The central issue of this case is whether the brewmaster and cord constitute an entirety. If so, the computation of the copper tax was properly made on the basis of the combined weight of the two items since the preponderance of copper in the cord causes the entirety to contain more than 4 percent copper by weight. If, however, the brewmaster and cord are not an entirety then the cord alone will bear the copper tax since it is agreed that the brewmaster alone has less than 4 percent copper by weight.

The doctrine of entireties does not lend itself to an easy formulation. The untold number and variety of commercial articles, their constant development and change both with respect to composition and to use, make the determination of what constitutes an entirety a complex task. In the absence of a clear-cut rule, the courts have found it necessary to take a flexible approach. Certain basic approaches, however, do provide a measure of continuity. A frequently quoted statement on entireties is the view of our appellate court in *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232, to the following effect:

> * * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

This statement, while serviceable in many fact situations, does not solve the problem in this case. In *Altman & Co.* v. *United States*, *supra*, it was manifest that the combination of the corset and lace trimming there involved was a matter of unvarying practice, and the customary way of selling and using those garments was with aforesaid trimmings attached. Here, however, the prospect of joinder before sale is less certain. The purchaser of the brewmaster and cord may make alternative uses of the cord and may substitute other commercially available cords for the one imported. He may, and, in the case of the merchandise covered by entry 13514, apparently does, purchase the brewmaster without cord. Here there is less of a prospective bond between the articles and, consequently, less reason to find an entirety under the broad *Altman* rationale.

In point of fact, there is a line of thought regarding entireties whose origins antedate *Altman & Co.* v. *United States*, *supra*. When used to supplement the *Altman* approach, the concept of merger of components and identities lends itself to applications calling for finer distinctions. This concept was expressed in *United States* v. *Kalter Mercantile Co., et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680, as follows:

We are of the opinion that even though it be considered that the boots and straps were designed to be used together, when desired, and were sold together by the importer, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. * * *

Similar reasoning was employed in *Columbia Shipbuilding Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T.D. 39085, where an importation of steam engine and fan was held not to be an entirety, notwithstanding the fact that these were articles designed and intended to be used together.

It can be seen that the mere mechanical coupling of two components, actual or impending, does not, of itself, make an entirety. Thus, the placing of a watch in the strap of a woman's pocketbook in *United States* v. *John Wanamaker, Philadelphia, Inc.*, 20 CCPA 367, T.D. 46132, and the tying of a pencil to a pad of paper in *Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 108, T.D. 41591, have been held not to create entireties.

The presence of functional interplay between the components will not of itself bring about the creation of an entirety. *Columbia Shipbuilding Co. et al.* v. *United States, supra.* Thus the importation of a turbine steam engine together with the machinery for which it was to furnish the motive power did not create an entirety. *G. W. Sheldon & Co.* v. *United States*, 52 Treas. Dec. 48, T.D. 42315. Similarly, batteries imported together with portable radios did not constitute an entirety. *United Merchandising Corp. et al.* v. *United States*, 48 Cust. Ct. 50, C.D. 2313. In the latter case, the court stated that, even if the batteries were considered to be parts of the radios, they would still retain their individual identities. As regards functional interplay, we may conclude that, while its absence may be decisive, its presence is not determinative.

It should also be noted that the exigencies or vagaries of packaging or marketing are not necessarily determinative of the issue of entireties. Thus, heel serts sold together with nails and paper board in an envelope did not constitute an entirety. *Hughes Fawcett, Inc.* v. *United States*, 29 Cust. Ct. 1, C.D. 1434. A brush and tray sold together for the purpose of sweeping crumbs from the table were also not an entirety. *Better Houseware Company* v. *United States*, 40 Cust. Ct. 230, C.D. 1988.

Even where all three elements of mechanical coupling, functional interplay, and unified packaging are present, we are not certain of having an entirety. See, for example, *United Merchandising Corp. et al.* v. *United States, supra.* The missing ingredient is the elusive concept of merger and subordination of identity. If the individual

identity and function of the components, while still discernible, have been superseded by and absorbed into the identity and function of the resulting article, that article is an entirety. See *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, where the above requirement was met and a capsule containing cotton impregnated with an inhalant was held to be an entirety. Where one of the components remains capable of varied uses unrelated to the other component, a union of the two does not produce an entirety. This is so even if, when used together, the components are physically united and functionally interdependent. In the present case, the identity and function of the cord have not been lost in a new entity. The cord will serve as a device to channel electricity to all manner of appliances. Although designed for use with the brewmaster, it is not restricted to that use. Although it may be offered for sale with the brewmaster, it still retains its individual character.

It is to be noted that the finding of entireties in *United States* v. *Auto Import Co. et al.*, 168 Fed. 242, T.D. 29599, and *Close & Stewart* v. *United States*, 2 Cust. Ct. 318, C.D. 151, is not in conflict with the reasoning stated herein. In those cases, tires were imported together with, but unattached to, automobiles and bicycles, respectively. The tires were of use only with the autos or bicycles imported or other vehicles of the same genus. Thus they were clearly identified with the entire importation in addition to being essential to the use thereof. The cord in this case is useful with a wide variety of different electrical appliances and not committed to use with one type.

By reason of the foregoing considerations, we hold that the brewmasters without cords covered by entry 13514 were improperly assessed with a copper tax, and the claim in the protest to that effect is sustained. We hold further that the brewmaster and cord here involved are separate articles and, therefore, that the collector erred in finding them to be one for purposes of assessment of a copper tax. Inasmuch as the collector's conclusion was predicated upon a unit appraisement of the brewmaster and cord, and the values of each were not separately returned, the appraisement was void, the liquidation without effect, and the protest premature. *United States* v. *John Wanamaker*, 20 CCPA 381, T.D. 46185. *Hughes Fawcett, Inc.* v. *United States, supra.*

In accordance with the provisions of 28 U.S.C., section 2636(d), the protest is dismissed and the matter is remanded to a single judge to determine the value of the merchandise in the manner provided by law.

Judgment will be entered accordingly.