(C.D. 3869)

STANDARD BRANDS PAINT Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 22, 1969)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Watson, Judge: These protests involve the classification of certain mountings, consisting of hooks and cleats, imported and packed inside roll-up blinds. The mountings were classified with the blinds, as an entirety, under the provisions of item 222.50 of the Tariff Schedules of the United States at the rate of 40 per centum ad valorem as blinds of unspun fibrous vegetable materials, with or without their hardware.

Plaintiff claims the hooks and cleats are not dutiable with the blinds, as an entirety, under item 222.50 of said tariff schedules, but rather are properly classifiable separately at the rate of 19 per centum ad valorem under item 647.00 of the tariff schedules as "fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds * * * and similar uses".

The pertinent statutes herein involved are as follows:

Tariff Schedules of the United States:

Schedule 2, part 2, subpart B:

222.50    Blinds, shutters, curtains, screens, and shades, all the foregoing, of unspun fibrous vegetable materials, with or without their hardware_____      40% ad val.

Schedule 6, part 3, subpart D:

Hinges; and fittings and mountings not specially provided for, suitable for furniture, doors, windows, blinds, staircases, luggage, vehicle coach work, caskets, cabinets, and similar uses; all the foregoing, of base metal, whether or not coated or plated with precious metal:

     Not coated or plated with precious metal:

647.00          Of iron or steel, of aluminum, or of zinc_____      19% ad val.

The record consists of the testimony of one witness for the plaintiff and three exhibits received in evidence on its behalf. Plaintiff's exhibit 1, while not out of the actual importations in issue, was identified by plaintiff's witness as being identical, except for size, to merchandise described on the invoices herein as "No. 301 Inside Peel Natural Color" blind. (R. 5-6.) Plaintiff's exhibit 2 consists of a bag of mountings, containing two hooks and a cleat, which the record shows was imported with the blind and physically packed inside of each blind. (R. 6-7.) Plaintiff's exhibit 3 is an instruction sheet, taken from inside the blinds, showing how to hang the blinds. It was stipulated that the mountings are, in fact, of base metal, iron or steel, not coated or plated with precious metal. (R. 3.)

Mr. Abraham S. Bressler, plaintiff's witness, testified that he is the import manager of Standard Brands Paint Co., the plaintiff herein, and that his duties involved the purchasing of imported goods. He stated that he had purchased the merchandise under consideration, and identified plaintiff's exhibit 1 as a representative sample of one type of the imported blind, similar to item "No. 301 Inside Peel Natural Color" blind indicated on the invoices. The record discloses that the "mountings" (plaintiff's exhibit 2) as imported were packed inside of plaintiff's exhibit 1.

Plaintiff's witness identified the instruction sheets (plaintiff's exhibit 3) that come with the blinds and mountings. He then stated that all of the items in plaintiff's exhibit 2 are utilized in the mounting of the blind (plaintiff's exhibit 1). The witness further testified that he imports the mountings separately and that mountings were sold separately. He stated that they could be used with blinds of other materials, such as plastic blinds; and that the hooks in plaintiff's exhibit 2 can be used to hang up anything a customer might wish to hang, while the cleats can be used for any purpose where it would be necessary to tie a rope or cord around an object. (R. 9.)

On cross-examination, Mr. Bressler testified that the items contained in the packet (plaintiff's exhibit 2) were called "mountings", and that they are contained with the blind as they come in and are not taken apart. (R. 11.) Although plaintiff's witness stated that the "mountings" were not dedicated for use with the blinds herein, and that they could be utilized for purposes other than with blinds, when asked as to what use they would be put if the mountings were not used with plaintiff's exhibit 1, Mr. Bressler stated:

> * * * Your Honor, it is utilized in most cases with Exhibit 1. That's why it is in there to begin with. [R. 13.]

In support of its claim that the hooks and cleats here involved are separately classifiable under item 647.00 of the tariff schedules at the rate of 19 per centum ad valorem as fittings or mountings not specially provided for, suitable for blinds, plaintiff in its brief contends that the mountings at bar are not classifiable with the blinds because they are not an "entirety" with the blinds; and that " 'hardware' for blinds, is classifiable with the blinds only when they are in fact entireties and not otherwise." Plaintiff maintains that "As the facts in the record establish *prima facie* that Plaintiff's exhibit 2 is in fact mountings suitable for furniture, doors, windows, blinds, cabinets and similar uses, the claim for classification under item 647.00 should be sustained." (Plaintiff's brief page 4.) In this connection, plaintiff directs our attention to the holding of the court in *Silvine Importers, Inc.* v. *United States*, 57 Cust. Ct. 362, C.D. 2821 (1966), wherein certain

electric pots were held not to be entireties with the detachable electric cords with which some of them were imported. In its decision, the court, page 368, stated:

> * * * Where one of the components remains capable of varied uses unrelated to the other component, a union of the two does not produce an entirety. This is so even if, when used together, the components are physically united and functionally interdependent. In the present case, the identity and function of the cord have not been lost in a new entity. The cord will serve as a device to channel electricity to all manner of appliances. Although designed for use with the brewmaster, it is not restricted to that use. Although it may be offered for sale with the brewmaster, it still retains its individual character.

In this case, we are concerned with the application of the phrase "with or without their hardware" in item 222.50, *supra*, to the imported merchandise.

The defendant maintains that under the provisions of paragraph 411 of the Tariff Act of 1930, if customs officials had concluded that a blind, imported with its hardware, constituted an "entirety" for tariff purposes, it would then have been necessary to determine the component material of chief value in order to fix classification of the merchandise either under paragraph 411 or paragraph 397. In support of this theory of classification as "entireties", defendant directs our attention to the holding of this court in *Ross Products, Inc.* v. *United States*, 43 Cust. Ct. 74, C.D. 2106 (1959), and *Arnart Imports, Inc.* v. *United States*, 54 Cust. Ct. 187, C.D. 2531 (1965).

In the *Ross Products* case, *supra*, the merchandise consisted of a decorated porcelain plate, having a cord strung through two holes in the back of the plate, contained in a wire frame about 2 inches wide. It was stipulated that the chief value of the representative exhibit was the wire holder, which was in chief value of iron or steel. The involved merchandise was assessed with duty under paragraph 212 of the Tariff Act of 1930, as modified, on the porcelain portion, and under paragraph 339 of the tariff act, as modified, on the wire frames. The record disclosed that the merchandise was imported, bought, sold and used as a commercial entity, as wall plaques. The court held it to be an entirety for tariff purposes and properly dutiable under paragraph 397, as modified, as articles or wares, not specially provided for, in chief value of iron or steel, as claimed. In so holding, the court in the *Ross Products* case, *supra*, at page 77, stated:

> It has long been held that "if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entire-

ties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately." *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, 318, T.D. 41232; *Charles Garcia & Co., Inc.* v. *United States*, 45 C.C.P.A. (Customs) 1, C.A.D. 663; *United States* v. *H. K. Miyaka*, 22 C.C.P.A. (Customs) 38, T.D. 47039, *James Betesh Import Co.* v. *United States;* 40 Cust. Ct. 186, C.D. 1981.

In *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680 (1923), the merchandise consisted of certain rubber boots, fitted with rubber loops by means of which leather straps imported with them could be used to bind them at the feet and ankles. The court therein held that the rubber boots did not in common with the straps, become entireties. In so holding, the court, page 545, stated:

> We are of the opinion that even though it be considered that the boots and the straps were designed to be used together, when desired, and were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. * * *

It appears that the position of the defendant in this case is that item 222.50 of the Tariff Schedules of the United States includes the mountings (plaintiff's exhibit 2) whether or not they are "entireties" with the blinds. In our opinion, the term "with or without their hardware" under item 222.50 of the tariff schedules as applied in this case, is not limited to such hardware which forms an "entirety" with the imported blinds. Rather, it would seem that Congress intended the words "their hardware" as used in that item to refer to all classes of hardware shipped with and dedicated for use with merchandise covered by said item.

In the United States "Tariff Classification Study, Explanatory and Background Materials" (1960), Schedule 2, page 28, we note the following:

> Item 206.65 provides for wood blinds, shutters, screens, and shades "with or without their hardware." These articles are presently dutiable under paragraph 411 at 40 percent ad valorem which is also the proposed rate. The added language, "with or without their hardware", would eliminate problems connected with determinations of the component material of chief value and would not materially affect imports.

Item 206.65 of the tariff schedules is for all purposes identical to the provisions of item 222.50, *supra*, with the exception that item 206.65 covers such articles when of wood other than unspun fibrous vegetable material. It appears from the above that the added language "with or without their hardware" was intended to eliminate "problems" con-

nected with the component material of chief value. In our opinion, the same criterion with respect to the added language "with or without their hardware" as expressed in item 206.65 of the tariff schedules, is applicable to the same language in item 222.50 of said schedules, namely, that when a blind is imported with hardware such that there may be a problem as to what is the component material of chief value of the importation, the component material of the "hardware" is not to affect the determination of the classification of the merchandise, in this case as blinds of "unspun fibrous vegetable materials" and thus properly classifiable under item 222.50 of the tariff schedules.

The congressional intent to avoid having blinds escape classification as "blinds" because of the "problems connected with determinations of the component materials of chief value" (Tariff Classification Study (1960), Schedule 2, page 28, *supra*) is reflected in headnote 3, to subpart B, part 2, schedule 2 (covering "wood and paper") of the Tariff Schedules of the United States (1963), page 94, as follows:

> 3. For the purposes of this subpart, materials other than unspun fibrous vegetable materials shall be disregarded in determining the component material of chief value in any article if their primary function in the article is to bind, tie, or otherwise hold unspun fibrous vegetable materials together, or to support or reinforce such materials.

In our opinion, limitation of the term "their hardware" as appears in item 222.50 of the tariff schedules to an "entirety" concept would in effect require continuation of the problems connected with the determination of the component materials of chief value in an importation covered by the involved item.

The record in this case discloses that while the mountings in question are primarily used with the imported blinds or other blinds, they are not confined or dedicated to such use. (R. 11–14.) They are general purpose articles and, in fact, are suitable for furniture, doors, windows, blinds, cabinets and similar uses. The undisputed facts establish, in our opinion, that the "mountings" and blinds are not entireties within the contemplation of the tariff act.

For the reasons above stated, we hold that the hooks and cleats are not dutiable with the blinds as an "entirety" (under item 222.50 of the tariff schedules), but are classifiable separately under item 647.00 of said schedules at the rate of 19 per centum ad valorem, as mountings not specially provided for, suitable for "furniture * * * blinds * * *", of base metal, of iron or steel, not coated or plated with precious metal, as claimed.

Judgment will issue accordingly.