(C. D. 758)

ABERCROMBIE & FITCH CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 17, 1943)

*Lane & Wallace* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Frank X. O'Donnell, Jr.*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

OLIVER, Presiding Judge: This suit against the United States was brought· at the port of New York to recover customs duties claimed to have been illegally assessed upon certain croquet sets composed of balls and mallets and other articles ordinarily used in conjunction therewith. The merchandise was described on the invoice as Wimbledon Croquet or Wimbledon Championship Croquet sets.

The complete sets were assessed with duty at 30 per centum ad valorem under the provision of paragraph 1502, Tariff Act of 1930, reading as follows:

PAR. 1502. Boxing gloves, baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), and all clubs, rackets, bats, golf tees, and other equipment, such as is ordinarily used in conjunction therewith, all the foregoing, not specially provided for, 30 per centum ad valorem * * *.

The importer in its protest of the collector's assessment claims the balls and the croquet mallets properly dutiable at 20 per centum ad valorem as separate articles under paragraph 1502, as amended by the trade agreement with the United Kingdom, T. D. 49753. No claim for a lower rate of duty was made by the importer on any of the other articles included in the sets.

The provisions of the trade agreement, T. D. 49753, under which the importer makes its claim, so far as pertinent, read as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1502 | Footballs and other balls, finished or unfinished, not specially provided for, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), except balls wholly or in chief value of rubber. | 20% ad val. |
| 1502 | Field-hockey sticks and guards, polo mallets, table-tennis bats, croquet mallets, golf clubs, soccer guards and tennis nets. | 20% ad val. |

It is plaintiff's contention that the balls imported as part of these croquet sets are separately dutiable under the provision for "other balls" and the croquet mallets under the *eo nomine* provision for them in the trade-agreement modifications of paragraph 1502 as set forth above. The defendant contends that the croquet sets as imported are entireties for tariff purposes and that as the trade agreement does not provide for "* * * other equipment, such as is ordinarily used in conjunction therewith * * *" which language appears in paragraph 1502 of the Tariff Act of 1930, the balls and croquet mallets are not separately dutiable and therefore may not receive the benefit of the lower rate of duty provided in the trade agreement.

It may here be pointed out that the croquet sets before the court differ in many respects from the croquet sets with which we are familiar in this country. The imported sets known as the Wimbledon Championship Croquet sets are expensive and very heavy in construction, the wickets being made of heavy iron, and the equipment for setting up and playing the game indicates that with this set the game is played in a very exact and scientific manner. A sample of the set was exhibited at the trial and later withdrawn. In its place a photograph was substituted therefor and marked collective exhibit 1.

Two witnesses testified for the plaintiff. No testimony was introduced in support of the collector's classification.

There is little dispute as to the facts, and the testimony of the witnesses may be briefly summarized as follows: There are some differences in the game of croquet as played under the English and American rules and the imported sets include the complete equipment used in the English game. This equipment consists of four mallets with the heads reinforced with metal bands at the striking edge; four balls made of composition material; two winning posts made of wood with metal tops; six hoops or wickets made of heavy malleable iron; a driving stake used to make holes in the ground before inserting the hoops so that their spread is not changed; a metal gauge to insure proper spacing of the wickets; four metal clips corresponding to the colors of the balls to be clipped to the next hoop or wicket to be used by a player; four boundary markers each composed of a metal staff and cloth flag; eight boundary pegs made of wood to show the ball line; and an iron hammer and a driving block, the latter made of hard wood used in setting up the hoops. There are also a number of colored metal disks similar in general design to a thumb tack but much larger, which are used to indicate the last position of each player's ball should the game be temporarily adjourned. The entire set as imported is packed in a substantial wooden box with compartments to take the various items enumerated above (illustrative exhibit 1). The articles not actually in use during the game are the hammer, the driving block, driving stake, and possibly the gauge. The driving block is used at the beginning of every game but may not be used again during actual play. It appears that in the English game, only one winning post is used, while in the American game two winning posts are used. As imported each set contained two posts. It likewise appears that the American game is played with nine hoops or wickets whereas the English game is played with six.

It was stipulated between counsel that the four balls in the set were of composition material and not composed of rubber. It also appears that the mallets from one set could be used interchangeably with the balls or equipment of another set in order to accommodate additional players. The importers frequently imported various articles separately, ordering from a catalog when such additional equipment or replacements were desired. The record also discloses that this merchandise was ordered as complete sets and invoiced as sets, and the equipment as imported was used in the condition in which imported, and in some instances, with the addition of some other pieces. One of the witnesses also testified that the box was made especially for the particular set as imported; that the set was

imported and sold in that box which had compartments to take the various units in the set, being provided with drop handles on each and for the purpose of carrying the equipment from place to place.

The witnesses further testified that when they bought the set they also bought extra wickets and extra sets of balls, and it appears that in this country they frequently have to sell additional wickets, balls, and mallets as the game is often played by six people instead of four or two, as in the English game.

Paragraph 1502 of the Tariff Act of 1930 provides for duty on "* * * all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), * * * and other equipment, such as is ordinarily used in conjunction therewith * * *." The British Trade Agreement, *supra*, in reducing the rate of duty on merchandise covered by paragraph 1502, amended the paragraph as hereinbefore indicated, providing for "other balls, finished or unfinished, not specially provided for, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport) * * *." It seems clear that in the absence of the aforesaid trade agreement the merchandise at bar would be properly dutiable under paragraph 1502 as "* * * all other balls * * * and other equipment, such as is ordinarily used in conjunction therewith * * *." (*Marshall Field* v. *United States*, 20 C. C. P. A. 225, T. D. 46037; *United States* v. *Downing*, 14 Ct. Cust. Appls. 43, T. D. 41549.)

In *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516, T. D. 40730, the court, having under consideration the meaning of "equipment" as used in paragraph 1402 of the Tariff Act of 1922, the predecessor of paragraph 1502 of the present act, said (p. 519):

We are consequently of the opinion that the term "equipment" as used in paragraph 1402 means inanimate objects ordinarily used and needed or required for the safe, proper, and efficient taking of physical exercise with balls, and inanimate objects ordinarily used and needed or required for the safe, proper, and efficient playing of any indoor or outdoor ball game or sport.

For some reason which is not apparent, the said trade agreement has not provided for a reduction in duty on the "other equipment" referred to above. The trade agreement further provides in a second section under the same paragraph, for "Field-hockey sticks and guards, polo mallets, table-tennis bats, *croquet mallets*, golf clubs, soccer guards, and tennis nets" (italics mine). It may be assumed that the negotiators of the trade agreement had some reason for changing the aforesaid second section of paragraph 1502 and making *eo nomine* provisions therein for table-tennis bats and croquet mallets. We refer to these two items jointly as it is a matter of common

knowledge that both table tennis (ping-pong) and croquet are played with miscellaneous equipment, the former with balls, bats, and a net with fittings to fasten it to a table, and croquet with a set consisting of balls, mallets, wickets, and posts, or with the elaborate type of set here before the court. There is nothing in the trade agreement to indicate that the *eo nomine* provisions appearing therein were intended to cover and apply only to table-tennis bats and croquet mallets imported separately and apart from the other items necessary to play either game. In the absence of some expressed provision indicating such intent, no such intent will be read into the agreement.

The fact that the various articles constituting the set are packed together, imported together, and intended to be used for the single purpose of playing the game of croquet, does not of itself establish that these sets are entireties. The separate items going to make up the imported croquet sets were not in any way assembled so that each of the items became an essential part of a new article having a different name, character, and use. Each of the articles may be sold separately and has a separate dutiable status, and the whole is not an entirety. (*Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 108, 111, T. D. 41591.)

In *Lang Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 341, T. D. 42495, the merchandise involved was a tablecloth and napkins imported in sets. Each set consisted of a tablecloth and six napkins to match, packed together in a paper carton. They also were ordered and sold in sets. The court therein stated:

\* \* \*. In the instant case the tablecloth is complete without the napkins. The napkins are complete articles independent of the tablecloth. The mere fact that they may be bought, sold, and used together, in sets, does not require that they be regarded as entireties for tariff purposes.

The court further stated (p. 342):

\* \* \*. The mere fact that they may be bought; sold, and used together, in sets, does not require that they be regarded as entireties for tariff purposes.

In *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680, the merchandise before the court consisted of rubber hip boots with leather straps. On the question of entireties the court said at page 544:

\* \* \*. Can it be fairly said that when the leather strap is attached to the boot by being passed through the rubber loop, it becomes so merged with the boot by assembly that it loses its identity as a leather strap? Certainly when thus united the boot and the strap do not merge so as to form a new or distinct article, having a different character or name. The boot remains a boot and the leather strap remains a leather strap, even when used together.

Further in the same opinion the Court of Appeals discusses the case of *Columbia Shipbuilding Co.* v. *United States*, 11 Ct. Cust. Appls. 281,

T. D. 39085, involving a steam engine and a fan intended to be assembled and used together on a vessel. The combination of these two articles was held not to constitute an entirety, the court stating on page 546:

* * *. In other words, by assembly the fan did not merge with the engine nor the engine with the fan, so as to form a new or distinct article having a different character or name.

In *United States* v. *Kronfeld, Saunders, Inc.*, 20 C. C. P. A. 57, T. D. 45679, the court said (p. 60):

* * * when two or more parts of an article are shipped together and are intended to be used together as one article, and by mere assembly they are made into one article, they shall be regarded as entireties for tariff purposes.

The croquet sets before the court are not entireties for tariff purposes. The various items making up the set are each complete articles of commerce. They are not intended to be, nor have they been, joined together or merged so that their separate identities have been lost and a new and different article with a new name and use brought into being.

The various items going to make up the croquet sets herein are separately dutiable. The balls and croquet mallets in each set are held properly dutiable at 20 per centum ad valorem under paragraph 1502 of the Tariff Act of 1930, as modified by the British Trade Agreement (T. D. 49753), and the balance of the merchandise imported is held properly dutiable at 30 per centum ad valorem under the same paragraph as assessed by the collector.

To the extent indicated the protest is sustained; in all other respects and as to all other merchandise all the claims are overruled.

Judgment will be rendered accordingly.