(C.D. 2756)

LAFAYETTE ELECTRONICS MFG. CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 8, 1966)

*Siegel, Mandell & Davidson* (*Murray Sklaroff* and *David Serko* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

NICHOLS, Judge: The merchandise involved in this case consists of portable transistor radios in leather cases imported from Japan and entered at the port of New York on December 11, 1959.[1] The radios were assessed with duty at 12½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as radios wholly or in chief value of metal. The cases were assessed at 20 per centum ad valorem under paragraph 1531 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as cases wholly or in chief value of leather. It is claimed that the radios and cases constitute an entirety dutiable at 12½ per centum ad valorem under paragraph 353, as modified.

The pertinent provisions of the tariff act, as modified, are as follows: Paragraph 353, as modified:

Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices)___ 12½% ad val.

---

[1] This case was heard in New York on November 2, 1964, and February 1, 1965, on which date it was submitted. Plaintiff's brief was filed on October 11, 1965, and defendant's on June 9, 1966. This case was resubmitted before the First Division as now constituted on May 23, 1966.

Paragraph 1531, as modified:

Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather (except reptile leather), or parchment * * * :

\*　　\*　　\*　　\*　　\*　　\*　　\*

Bags, baskets, belts, satchels, pocketbooks, jewel boxes, portfolios, and boxes and cases, not jewelry; any of the foregoing not provided for heretofore in this item _____ 20% ad val.

Lafayette Electronics Mfg. Corp., the plaintiff-importer also known as or associated with Lafayette Radio Electronics Corp., is a distributor in the electronics industry with branch stores in the northeast and 150 associated dealers in 40 states. It has a mail-order business and sends out about 2 million copies of its catalog each year, coast to coast and to Europe. Two employees of the firm testified at the trial: Lionel J. Zimmerman who has been in its employ for 18 years, for the last 15 as merchandiser and in charge of importing and quality, and Leon Schiffman, store manager, who has been employed by Lafayette for about 33 years. Mr. Zimmerman's duties include design, development, marketing of various products, and administrative supervision. He has also had something to do with the catalog material that is distributed here and abroad. Mr. Schiffman oversees the operation of the store, stimulates sales, helps in selling, and knows the stock and the nature of the merchandise.

The merchandise involved herein, described on the invoice as "FS-206 Transistor Radio w/Leather Case," is one of a line of radios handled by Lafayette. No sample was available but a sample of another model, FS-305, was received in evidence as plaintiff's collective illustrative exhibit 1. The former is a single band transistor radio capable of tuning only the broadcast band whereas the latter includes both the broadcast band and a short wave; the latter is slightly larger but the two are similar in general appearance and are packed the same way. Both have leather cases. The merchandise is packed in an outer container within which is the receiver itself in a leather case, six small batteries, an earphone in a leather case, and a carrying strap. Portions have been cut out of the leather case so that the dial with the station selector indicator appears and the controls which tune the set or adjust volume may be adjusted through the openings. The black coiled leather strap is to make a longer handle so that the article can be carried over the shoulder.

The radio is in the case when the merchandise is received from the manufacturer abroad, and it is offered and sold in the same fashion. Mr. Zimmerman said he had never sold such a radio without the case

but that there would be some market for it. Both witnesses testified that the leather case serves as a device to protect the radio from damage and as a means of transporting it. It adds to the style of the radio and is less a functional part of the radio than it is a part of the concept involved in merchandising the radio. It does not serve as an operating part of the radio, but adheres to the vogue in portable radios that was established many years ago. The radio can be operated without removing the case; it can also be operated outside the case. The radio with the case serves precisely the same function as the radio alone. The case must be removed in order to replace batteries in the radio and to repair it. When the case is removed, there are two separate entities, a radio and a case, and when the radio is put into the case, "we still have a radio and case."

There was received in evidence a 2 transistor single band portable radio in a leather case. (Plaintiff's illustrative exhibit 2.) It is a less expensive model, but the case is die cut so that the radio may be operated in normal fashion without being removed from the case. It is not always sold with the case.

The witnesses testified that they had seen merchandise like exhibits 1 and 2 in use on the streets, at picnics, beaches, and playgrounds; hanging on bicycles, and in automobiles hanging on the knobs of the lighter or any other extremities on the dashboard. Mr. Zimmerman had seen persons carrying them in their hands and had seen them put into a purse or pocket, always with the case. He had never seen them used without a case. Mr. Schiffman said the radio could be carried without the case, but it could not be hung from a knob.

According to the record, Lafayette sells table transistor radios without cases and without handles, but most popular transistor radios have a case or a handle which is part of the cabinet itself. A portable transistor radio which Mr. Schiffman said was built onto the leather case itself and had a built-in handle on the cabinet was received in evidence as plaintiff's illustrative exhibit 3. It has no separate case. Pages from a catalog issued by Lafayette in 1964 displaying pictures of transistor radios were received in evidence as defendant's exhibits A–1 through A–4. Mr. Schiffman said that those sold without cases had handles and that the one depicted on page 60 was identical with exhibit 1. It is described as "Complete with Carrying Case, Earphones and Batteries." The picture shows it outside the case and within the case.

Lafayette carries replacement parts for the merchandise it sells, and extra cases, spare parts of radios, and handles can be purchased.

The sole question before the court is whether the radio and the case constitute an entirety for tariff purposes. Plaintiff claims that the imported merchandise is a single article of commerce, a portable

transistor radio, and that the case is required for portability. Defendant contends that the cases do not lose their identity by merger with the radios, do not form a new article of commerce, and are not subordinated to the radios so as to lose their identity to the combination.

Except where the tariff act itself defines the entirety as in paragraph 1531 for fitted cases, for example, the question of entireties resolves itself into a question of what was actually imported, a single commercial entity made up of two or more parts, or several commercial entities which, although imported together, retain their individual identities and do not merge in the combination. *F. B. Vandegrift & Co., Inc.* v. *United States,* 43 Cust. Ct. 22, 24, 25–26, C.D. 2097.

Fitted leather cases designed for use in holding and transporting binoculars, cameras, and electric shavers, respectively, have been held not to constitute entireties with the articles contained, on the ground that the cases are separate, distinct, and complete entities apart from the articles and are not necessary for the articles to function properly. *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.,* 22 CCPA 281, T.D. 47330; *Camera Specialty Co., Inc., et al.* v. *United States,* 37 Cust. Ct. 144, C.D. 1814; *R. J. Saunders & Co., Inc.* v. *United States,* 50 Cust. Ct. 299, Abstract 67720. Acc. *United States* v. *E. Leitz, Inc.,* 22 CCPA 277, T.D. 47329 (wood and paper cases for microscopes).

The *Hensel, Bruckmann & Lorbacher, Inc.,* case was decided under a stipulation that the "cases and binoculars are not sold separately in this country but always together; that not all binoculars sold in this country are contained in cases * * *." The situation must have appeared close at the time, inasmuch as the collector had classified by entireties and a dissent below, 65 Treas. Dec. 103, 108, T.D. 46850, so urged. The dissenting judge said:

It is a matter of common knowledge, of course, that binocular cases are made especially to fit the binoculars and would be useless absolutely except for the particular binoculars for which they were made to fit, and it being conceded that these particular binoculars and cases are especially fitted to each other and always sold together, these facts cannot be altered or impaired by statement No. 2, that not all binoculars sold in this country are contained in cases. We are not concerned with any other binoculars and cases than those in issue * * *.

The force of this case as a precedent can be better appreciated when this argument that did not prevail is also considered.

In *Camera Specialty Co., Inc., et al.* v. *United States, supra,* the cameras were imported in leather cases and were sold as units. Separate charges were made in billing because an excise tax was payable on the cameras but not the cases. The cameras were screwed to the cases and did not have to be taken out for picture taking, but only for load-

ing film. The witness testified that it was handier for picture taking to have the camera in the case hanging from the neck. The court held that the cameras and cases were not entireties, stating (p. 148) :

* * * While it may be true, as alleged by plaintiffs' witness, that the camera is only taken out of the leather case when loading or unloading film, admittedly the camera can take a picture without being in the case, and the case contributes nothing to the operation of the camera. As a matter of fact, the record shows that, when taking pictures with the camera, the flap of the leather case itself must be opened.

The principal difference between that case and the instant one is that there the flap of the case had to be opened in order to use the camera whereas here the radio can be operated without removing or opening the case. In both instances, the case contributes nothing to the operation of the article. The distinction is insufficient to require a different result here.

Plaintiff relies on *Arnart Imports, Inc.* v. *United States*, 54 Cust. Ct. 187, C.D. 2531, and *F. B. Vandegrift & Co., Inc.* v. *United States*, *supra*. *Arnart Imports* involved wall plaques consisting of a wooden frame, a velvet pad, and a porcelain figure or figures. They were imported, bought, and sold as entities, but the parts could be disassembled and one of them, the frame, might have had some commercial value by itself. The court noted, however, that the porcelain-velvet assembly had no separate commercial value and that disassembly impaired the value of the pad, leaving at least one hole exposed. The court held the plaques to be entireties notwithstanding the fact that they could be disassembled without injury to one of the parts.

The *Vandegrift* case involved moisture testers consisting of several articles, all of which were contained in a wooden case. The articles were designed to test samples in the field, and it was essential that the sample tested weigh exactly 3 grams. For that reason, a balance scale was provided, which was mounted on a wooden platform which was fastened to the case in such manner that the platform was raised to a horizontal position when the case was opened. Thus the case had a function during the operation of the tester—that of providing a platform for the scale. The case also, the court said, contributed to the portability of the tester, keeping all parts required for the proper and efficient operation of the tester together and safe from damage while being transported.

The use of a fitted leather case or cover to protect and carry articles for use in travel and in an outdoor environment, and for elegance of appearance, clearly involves many similar considerations whatever sort of article is encased. There does not seem to exist any valid reason for distinguishing the merchandise now before us from that

in the precedents cited, and to attempt to do so would introduce confusion. A picture frame, as in *Arnart*, involves different purposes. The wooden case in *Vandegrift* had a working function that served to distinguish it in the court's mind from other cases. In the voluminous jurisprudence of tariff entireties, it might well be that reasoning might be found or "principles" stated on which to base a contention that almost any combination of commodities was a tariff entirety, or was not. The sensible thing for a court to do would seem to be to refrain from generalities, but to follow the cases that are closest on the facts, and not be troubled too much by the others. In dealing with entireties, different fact situations must be handled differently according to the facts, the intent of the Congress if known, and the intuition of the court for that intent if it is not known. In resolving such problems, precedents that are close on their facts are of peculiar weight. That defendant can cite decisions involving fitted leather cases, while plaintiff had to go further afield for its authorities, is strongly suggestive, if not compelling, as to the result we should reach.

In dealing with fitted leather cases in paragraph 1531, the Congress identified some of them which it wished to have treated as entireties with their contents: those "permanently fitted and furnished with traveling * * * sets."

A negative inference should have some weight when a leather case is claimed to be an entirety with something other than one of the specified "sets." However, it is not necessarily conclusive inasmuch as certain fitted sets not classifiable as "traveling sets" were held classifiable according to the component material of chief value, as entireties, in *United States* v. *Mark Cross Co.*, 4 Ct. Cust. Appls. 274, T.D. 33489.

On the record presented and on the authority of the decisions cited, we hold that the transistor radios and cases involved herein are not entireties for tariff purposes and were properly assessed with duty by the collector as separate entities. The protest is overruled, and judgment will be rendered for the defendant.