(C.D. 3221)

CHADWICK-MILLER IMPORTERS, INC., ET AL. v. UNITED STATES

United States Customs Court, First Division

(Decided December 11, 1967)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Earl R. Lidstrom* of counsel) for the plaintiffs.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before WATSON and BECKWORTH, Judges

BECKWORTH, Judge: These protests, consolidated at the trial, cover merchandise imported from England and entered at the port of Boston on various dates from 1955 through 1962. The claims have been limited to merchandise invoiced as jam frames, spoons, and glasses, 666, and double jam frames, spoons, and glasses, 666/D. The frames and spoons were classified under paragraph 339 of the Tariff Act of 1930, as modified, *infra*, as table or household utensils plated with silver and were assessed with duty at varying rates depending upon the date of entry. The glass dishes were classified under paragraph 218(f), as modified, *infra*, as table or kitchen articles, composed wholly or in chief value of glass, and were assessed with duty at 50 cents on each article, but not less than 30 per centum nor more than 50 per centum ad valorem.

It is claimed that the frame, spoon, and glass dish, constitute a unit called a "jam-dandy" and that they form an entirety for tariff purposes, subject to duty under paragraph 339, as modified, as table or household articles plated with silver.

Paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, provides as follows:

Table, household, kitchen, and hospital utensils, and
hollow or flat ware, not specially provided for,
whether or not containing electrical heating ele-
ments as constituent parts:

\*   \*   \*   \*   \*   \*   \*

Plated with silver_____ 23½% ad val.

This rate was effective June 30, 1956, and was reduced to 22½ per centum ad valorem effective June 30, 1957, and 21 per centum ad valorem June 30, 1958. It was further reduced to 19 per centum ad valorem by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, and Presidential Proclamation No. 3513, 98 Treas. Dec. 51, T.D. 55816, effective July 1, 1962.

Paragraph 218(f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and the Presidential proclamation of April 22, 1948, 83 Treas. Dec. 149, T.D. 51898, provides:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly of or in chief value of glass, blown or partly blown in the mold or otherwise * * *:

Other _____ 50 cents on each article or utensil, but not less than 30% nor more than 50% ad val.

The merchandise is described on the invoices as jam frames, jam spoons for above, and glasses for above, or as double jam frames, jam spoons for above, and glasses for above.

A sample of the single jam frame, spoon, and glass was received in evidence as plaintiffs' exhibit 1. The glass portion (exhibit 1–A) consists of a fancy glass dish about 5 inches in diameter at the top and 2⅞ inches in diameter at the bottom, and 1½ inches deep. The frame (exhibit 1–B) consists of a metal ring with three knobs or legs into which the glass dish fits and a handle or holder attached to the ring having a slightly notched piece at the top. The spoon (exhibit 1–C) is a metal spoon, smaller and differently shaped than a tea spoon, which fits into and hangs from the notched piece of the holder. It was stipulated that the metal portions were silver plated and that the spoon and frame together had a greater value than the glass portion.

The witness, Maurice Miller, president of Chadwick-Miller Importers, Inc., one of the plaintiffs herein, testified that the double frame article was similar except that the frame had two circular portions in which the glasses would fit and a double hanging arrangement for the spoons.

Mr. Miller said that he had been president of Chadwick-Miller Importers, Inc., for 20 years and that the firm imports housewares, giftwares, and notions. He was familiar with the merchandise which his firm handled and with the articles involved herein. He stated that the three components of exhibit 1 are packed and imported as

a unit, and that they are bought and sold as a unit. He had never sold any of the three components separately. In cases of breakage, his firm has had to replace the glass section for customers, but it did so without charge.

The witness said that he had seen this merchandise used on dining tables and buffet tables for the service of jams, jellies, nuts, sauces, and creams. He did not recall ever seeing it used for candy. He said it was not specifically designed as a nut dish but that he had seen it used to serve nuts. The spoon could be used to lift nuts from the dish although not exactly the same as a nut spoon which is a little different. The article is commonly referred to as a "jam-dandy" and was so described in advertising and promotion. To the knowledge of the witness, the jam frame has no use separate and apart from the two other items. The witness had never seen other glass dishes used in the frame although he did not doubt that dishes could be found which would fit the diameter of the frame. He had not seen other spoons like exhibit 1–C. He thought it would be extremely inconvenient for the ultimate consumer to substitute a dish or a spoon in the article, and he knew of no one who had done this.

The witness testified that the three components were billed separately "because it was our understanding that Customs required a breakdown of the various pieces that make this set."

The issue before us is whether the glass dish, the metal holder, and the spoon form such a unit as to be an entirety for tariff purposes. The underlying principle has been well stated in the oft-cited case of *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, as follows (p. 315):

* * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

The difficulty lies with the application of the principle to particular merchandise. This is well illustrated by two recent cases of the Court of Customs and Patent Appeals. *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894, and *United States* v. *Altray Company*, 54 CCPA 107, C.A.D. 919.

In the *Miniature Fashions* case, the court noted that the doctrine of entireties is to be used as an aid to ascertain proper classification and

that, because of its scope, it can lead to two contrary conclusions depending upon what criteria are given controlling effect. The court mentioned as possible criteria: "function," "use," "individual entities," "newly created entity," "intent," "design," or "commercial unit." It held that such criteria may not be applied so as to circumvent the intent of Congress.

The merchandise in the *Miniature Fashions* case consisted of so-called "cabana sets" described as "two-piece shirt-shorts sets." These articles were held to be entireties in view of the fact that evidence showed that they were designed as a unit, matched as to color, print, and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both at wholesale and at retail. When the parts were separated and either part returned for credit, such part was either given to charity or placed in a wastebasket. The court concluded that the separate articles had no commercial value except when joined as a unit, and held that the possibility that the wearer might use either article separately or with another article of wearing apparel was not controlling as to the proper classification of the goods as imported.

The merchandise in the *Altray Company* case consisted of miniature artificial Christmas trees about 2 inches high adhesively affixed at the base to a foil-wrapped chocolate wafer. The court held that these articles were not entireties even though when imported and sold they were affixed together. The court stated that, where a design of a combination by its very nature contemplates its disassembling and the utilization of the constituents in the very manner for which they were otherwise used, and when articles very similar to those constituents are sold as separate items, the combination is not an entirety in the tariff sense.

Both plaintiffs and defendant have cited numerous cases in support of their respective positions from which we select for discussion those having facts closest to those in the instant case.

The merchandise in *James Betesh Import Co.* v. *United States*, 40 Cust. Ct. 186, C.D. 1981, consisted of a small round earthenware bowl with three small legs and a three-pronged wire holder or tripod. Two of the prongs were just long enough to fit over the lip of the bowl, but the third prong extended over the bowl and was bent into three loops so as to form a cigarette rest. There was testimony that the components were bought and sold as a complete ashtray. There was also testimony that, if the bowl were broken, the whole article would be lost because another bowl could not be purchased separately and the holder could not be used by itself to hold cigarettes. The court found that the bowl by itself was just a bowl which could be used for holding various objects or as a decoration, but that the holder by itself had no practical

use. Although it might be used with other objects, the record indicated that it was never sold separately. The court held (p. 191):

Thus, while the bowl is complete in itself as a bowl, it is not complete as an ashtray, and the holder alone is not a complete article ready for actual use. However, when the two articles are put together, as designed, a new and distinct article of commerce, an ashtray, is formed. The individual identities of the separate parts are subordinated to the identity of the combined entity. Consequently, the article is to be regarded as an entirety for tariff purposes. * * *

In *Ross Products, Inc.* v. *United States*, 43 Cust. Ct. 74, C.D. 2106, the merchandise consisted of porcelain plates set in wire frames about 2 inches wide from which the plate could be physically removed. The two components were imported, bought, and sold as a complete article of commerce. The court pointed out that the holder by itself had no practical purpose; that, while it could be used with other products, the record indicated that it was never, in fact, sold separately, and that only when joined with the plate did it have any commercial value. The court, therefore, held that the merchandise was dutiable as an entirety.

In *Arnart Imports, Inc.* v. *United States*, 54 Cust. Ct. 187, C.D. 2531, the merchandise consisted of wall plaques, composed of a porcelain center with a raised figure or figures attached to a velvet pad and enclosed in a decorated wooden frame. The merchandise was imported, bought, and sold in an assembled condition. The court held that, although it was possible to disassemble the article and that when disassembled the wood frame was still a frame which might be sold commercially as such, the disassembly did not result in a salable porcelain-velvet pad, but its effect was to destroy commercial value of a significant portion of what had been imported as a unit. It, therefore, held that the merchandise was an entirety.

Defendant has cited and discussed a number of cases holding that articles imported in sets, bought, sold, and intended to be used together, did not form entireties for tariff purposes. *Lang Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 341, T.D. 42495 (tablecloth and napkins); *Abercrombie & Fitch Co.* v. *United States*, 10 Cust. Ct. 222, C.D. 758 (croquet sets); *W. A. Force & Co., Ltd.* v. *United States*, 24 Cust. Ct. 140, C.D. 1222 (fount sets). In each of these cases, the articles themselves were separate entities whose identity had not been lost and were, therefore, held separately dutiable.

The merchandise in *Taiyo Trading Co., Inc.* v. *United States*, 1 Cust. Ct. 410, Abstract 39426, consisted of bone lemon picks imported with an earthenware lemon dish. There was evidence that they were often imported and sold separately from the dishes and that the dishes were sold without the picks. It was, therefore, held that they did not constitute entireties.

In *Schwartz-Gilbert Co., Inc.* v. *United States*, 22 Cust. Ct. 238, Abstract 52871, the merchandise was described as a jam jar and chrome spoon, and as a glass sugar pot and chrome spoon. The cover of the pot was of chrome metal and did not have a hole in it to accommodate the spoon when not in use. As stated by the court, the spoon would have to be left outside the jar, and anyone desiring to remove the contents from the jar would first have to take the top off and then use a spoon. The court held that neither article was normally essential to the completeness of the other, and the fact that they were imported together had not caused any part to lose its identity or its commercial use. It was, therefore, held that the articles were not entireties.

See also *Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 108, T.D. 41591 (lead pencils and blank books fitted with loops to hold the pencils); *William Adams, Inc.* v. *United States*, 5 Cust. Ct. 239, C.D. 407 (metal trays each containing five glass dishes, two metal spoons or servers, and two metal forks). In those cases, the articles were held to retain their separate character, name, and use, and were, therefore, separately dutiable.

While it is difficult to draw generalizations, the cases cited indicate that where all of the entities in a combination are complete in themselves and are capable of separate use, the unit is not an entirety, but that where at least one of the entities has no separate commercial value or separate use, the combination is an entirety.

In the instant case, the glass dish and the spoon are separate articles which have different functions and could be used by themselves. They are of a type which could have been bought and sold separately, but, in fact, they were not. The holder, just as the holders in the *Betesh* and the *Ross Products* cases, has no commercial value and no use by itself. When the glass dish is added to it, the combination has a use for the service of foods. The addition of the spoon completes the unit making it especially useful for the service of jam or condiments, the purpose for which the combination was intended.

Contrary to the merchandise in the *Altray Co.* case, the design of the combination does not contemplate its disassembly and utilization of the constituents separately. Although the components are not permanently joined together, and the spoon and the dish are capable of separate use, the three entities were designed to be and are used together as a jam or condiment server thus forming a new article with a limited use rather than the more general use of which dishes and spoons are separately capable.

For the reasons stated, we are of the opinion that the combination involved herein is an entirety for tariff purposes, and, since it has been stipulated that it is in chief value of metal, silver plated, it is properly classifiable under paragraph 339 of the Tariff Act of 1930, as modified.

as table or household utensils plated with silver. The protests are sustained as to the merchandise described as single jam frames, spoons, and glasses, 666, and as double jam frames, spoons, and glasses, 666/D, and said merchandise is held dutiable under said paragraph 339, as modified, as table or household utensils plated with silver at the rate of duty in effect on the respective dates of entry thereof. As to all other merchandise, the protests are overruled. Judgment will be entered accordingly.