**LAFAYETTE RADIO ELECTRONICS CORP.**

v.

**UNITED STATES.**

C.D. 3672; Protest Nos. 65/14857–14498–63.

United States Customs Court,
First Division.
Jan. 21, 1969.

Barnes, Richardson & Colburn, New York City (James S. O'Kelly and Hadley S. King, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Bernard J. Babb, New York City, and Velta A. Melnbrencis, trial attys.), for defendant.

Before WATSON, MALETZ, and NEWMAN, Judges.

NEWMAN, Judge:

This case presents for our determination the issue of whether a portable transistor radio and its leather case constitute an entirety for tariff purposes.

The imported radios and cases were classified by the collector as two separate articles: the radios were assessed with duty at the rate of 12½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739,

as radios wholly or in chief value of metal; the leather cases were assessed with duty at the rate of 20 per centum ad valorem under paragraph 1531 of the Act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as cases wholly or in chief value of leather.

Plaintiff does not contest the classification of the radios *per se,* but claims that the radios and cases constitute entireties dutiable at the rate of 12½ per centum ad valorem under paragraph 353, as modified.

## Statutes Involved

Paragraph 353, as modified by T.D. 52739:

Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (not including television apparatus, instruments, or devices) ..................................12½% ad val.

Paragraph 1531, as modified by T.D. 51802:

Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather (except reptile leather), or parchment * * *:

     * * * * * * * *

Bags, baskets, belts, satchels, pocketbooks, jewel boxes, portfolios, and boxes and cases, not jewelry; any of the foregoing not provided for heretofore in this item ..........................20% ad val.

———◆———

### The Record

Plaintiff was engaged in the business of retailing hardware, radios, optical equipment and hi-fidelity components imported by itself and others. Mr. Nathan Raucher, the longtime store manager and sales manager of plaintiff's Jamaica, New York store, was the sole witness called to testify at the trial.

There does not appear to be any dispute concerning the pertinent facts in this case, which may be summarized as follows:

The imported merchandise consists of portable transistor radios in leather cases, designated on the invoice as either "FS–91" (a nine transistor AM radio) or "FS–223" (a multiple band radio.) Both models were imported and sold by plaintiff in a box which contained a radio, removable leather case, battery, and earphone. Because of its inability to produce samples of the imported merchandise, plaintiff introduced in evidence, as Collective Illustrative Exhibit 1, an "FS–305", described as a slightly larger portable transistor radio than the "FS–223", and having dif-

ferent die cuts in the leather case.[1] The "FS–305" was also imported and sold by plaintiff with a leather case, battery, and earphone, and was received in evidence for the purpose of illustrating "the condition of the merchandise as imported".

Normally, none of the individual items in Collective Exhibit 1 (radio, case, earphone, and battery) were separately sold by plaintiff. However, a customer who, originally, had purchased a radio with a case, and had lost the case, could place a special order with Mr. Raucher for a replacement case. In such event, the order was forwarded to the company's main office, where it was filled.

The "FS–223" was never sold by plaintiff without a leather case.[2] Such case, specifically designed for that particular radio, was not interchangeable with the case of another model. It was anticipated the case would be removed from the radio solely for the purpose of inserting batteries; and that the radio could function either outside or inside the leather case.

The leather case served: to protect the radio's plastic cabinet; to enhance the appearance of the radio; and to facilitate the portability of the radio, since the leather case has a handle or strap. The radio, itself, had no handle.

It appeared that plaintiff also sold, without leather cases, portable transistor radios with a handle attached to the cabinet. (These are depicted in Defendant's Exhibit A, page 61, of a 1964 Lafayette catalog.)

### The Issue

Did the transistor radios and leather cases constitute "entireties" for Customs purposes?

Plaintiff concedes (Brief, page 4) that this case is a retrial of the issues presented in Lafayette Electronics Mfg. Corp. v. United States, 57 Cust.Ct. 171, C.D. 2756 (1966), wherein, in overruling the protest, this court held that on the record presented, the portable transistor radios and leather cases involved in that proceeding were not classifiable as entireties, and were properly assessed with duty by the collector as separate entities.

Plaintiff contends:

a) that this court's prior decision has been rendered inapplicable by reason of the subsequent decision of the appellate court in Miniature Fashions, Inc. v. United States, 54 CCP A11, C.A.D. 894 (1966), holding that the shirts and shorts in so-called "cabana sets" were properly dutiable as entireties, rather than as separate articles;[3]

b) that the record in the present case may be distinguished from the prior record, since it has proven that the leather cases have no commercial value or use apart from the radios with which they were imported and sold;

c) that (by inference) the precedents cited in support of this court's prior decision do not support such decision, inasmuch as the precedents were based on findings that the leather cases had no appreciable effect on the operation of the articles with which they were imported, and served only as containers for the articles when not in use; and

d) that the leather cases are not those which Congress has provided for in paragraph 1531.

Defendant contends:

a) that the leather cases involved herein are not entireties with the radios, since the two items were never de-

---

1. The leather case is die cut so that it need not be removed to operate the radio. Holes are cut in the leather case for exposure of the dial, station selector, and volume control through the openings in the case; i. e., "for contact from the outside".

2. No testimony of a parallel nature was adduced concerning the "FS–91", which failure, apparently, was an oversight.

3. *Lafayette Electronics* was decided by this Court September 8, 1966, and *Miniature Fashions* was decided by the Appellate Court on December 8, 1966.

signed to, nor did they merge into, one article of commerce or a new entity;

b) that *Lafayette Electronics*, supra, is *stare decisis* in this case, and that *Miniature Fashions, Inc.*, supra, is readily distinguishable.

We conclude that plaintiff's contentions are untenable, and that defendant's position is sound.

In brief, the determination in *Lafayette Electronics* is clearly applicable to the facts of record in the present case. We regard it unnecessary to quote at length from that holding, tempting though that may be. But despite our reluctance to quote extensively from our prior holding in *Lafayette Electronics*, we deem it appropriate, again, to repeat as apposite (page 175):

> Fitted leather cases designed for use in holding and transporting binoculars, cameras, and electric shavers, respectively, have been held not to constitute entireties with the articles contained, on the ground that the cases are separate, distinct, and complete entities apart from the articles and are not necessary for the articles to function properly. United States v. Hensel, Bruckmann & Lorbacher, Inc., 22 CCPA 281, T.D. 47330; Camera Specialty Co., Inc. et al. v. United States, 37 Cust.Ct. 144, C.D. 1814; R. J. Saunders & Co., Inc. v. United States, 50 Cust.Ct. 299, Abstract 67720. Acc. United States v. E. Leitz, Inc., 22 CCPA 277, T.D. 47329 (wood and paper cases for microscopes).

In support of its present posture, plaintiff relies heavily upon *Miniature Fashions, Inc.*, supra. The appellate court's decision in that case was summarized by this court in Chadwick-Miller Importers, Inc., et al. v. United States, 59 Cust.Ct. 529, 532–533, C.D. 3221 (1967), cited in the briefs of both parties, as follows:

> In the *Miniature Fashions* case, the court noted that the doctrine of entireties is to be used as an aid to ascertain proper classification and that, because of its scope, it can lead to two contrary conclusions depending upon what criteria are given controlling effect. The court mentioned as possible criteria: "function," "use," "individual entities," "newly created entity," "intent," "design," or "commercial unit." It held such criteria may not be applied so as to circumvent the intent of Congress.

> The merchandise in the *Miniature Fashions* case consisted of so-called "cabana sets" described as "two-piece shirt-shorts sets." These articles were held to be entireties in view of the fact that evidence showed that they were designed as a unit, matched as to color, print, and fabric, imported as a unit and pinned together, invoiced as a unit, and sold as a unit both at wholesale and at retail. When the parts were separated and either part returned for credit, such part was either given to charity or placed in a wastebasket. The court concluded that the separate articles had no commercial value except when joined as a unit, and held that the possibility that the wearer might use either article separately or with another article of wearing apparel was not controlling as to the proper classification of the goods as imported.

Additionally, and specifically, cabana sets in the *Miniature Fashions* case were such inexpensive articles of children's apparel that, as noted in the Customs Court's first opinion, "have very little, if any, value when separated. They do not even warrant the expense of removing the pins which attach the two pieces together, and should one of the parts be damaged, the entire set would ordinarily be returned for credit or replacement". (*Miniature Fashions, Inc.*, supra, at page 13).

Doubtlessly, there was little proportionate difference in actual salable value between the shirt and the shorts of the cabana set. Here, there appears a significant disparity in value. Thus, the "FS–91" is entered at: radio $13.23—case $0.78; the "FS–223" is entered at: radio $12.60—case $1.10. Plainly, then, common sense dictates that the functional radio would not be discarded, and would

remain portable, if the case were to be damaged or the fragile case handle to be torn.

The business incentive which initiated the leather case for enhancement in appearance and facilitation in portability is to be applauded. But it cannot serve to circumvent, what appears to us, to be the obvious intent of the Congress.

We find, for further reasons, that the facts here are distinguishable from those in *Miniature Fashions*. A crucial difference between the two cases, in our view, is that in *Miniature Fashions* the separate articles (shirt and shorts) were deemed by the appellate court to have no commercial value except when joined as a unit; while in the present case, common knowledge and the facts of record establish that a transistor radio has commercial value whether or not contained in a leather carrying case. As we have seen, the radio is not dependent upon the case to perform its function, and can be operated without the case. Indeed, Mr. Raucher admitted, after being shown Defendant's Exhibit A, that plaintiff sold portable transistor radios which did not have leather cases. There is no evidence that the radio would be disposed of if the leather case were lost or damaged. Nor was it established that if the radio was defective or damaged that both the radio and the case would be returned or replaced. The evidence shows that replacement cases were sometimes purchased from plaintiff, on special orders, from customers who owned the radio and had lost the case. In *Miniature Fashions*, however, because of the cheapness of the shirt and shorts, it was uneconomical to remove the pins holding the two articles together. Upon return because of some damage to one item, both items would be disposed of. Certainly no such conclu-

sions can be drawn in the present case since it was not shown that either the case or the radio was an inexpensive article, hardly worth removing one from the other.

Moreover, unlike the cabana sets in *Miniature Fashions*, the leather cases and radios involved herein do not purport to be a matching "set", notwithstanding that they were sold together with a battery and earphone in the same retail package.

In its reply brief, plaintiff contended that evidence had been adduced in the present case which was not in the record of the prior case. The additional evidence, upon which we are urged to distinguish the decision in the prior case, is that "plaintiff has proved conclusively that each leather case has no commercial value or use apart from the radio imported and sold one with the other."

Assuming *arguendo* that these facts have been newly established,[4] we do not regard them as a valid basis for departing from the holding in the prior case.

Although it may be *generally* true "that where at least one of the entities [in an entirety] has no separate commercial value or separate use, the combination is an entirety",[5] we do not regard such generalization as helpful in solving the problem in this case. As was stated by this court in Silvine Importers, Inc. v. United States, 57 Cust.Ct. 362, C.D. 2821 (1966), at 366:

> The doctrine of entireties does not lend itself to any easy formulation. The untold number and variety of commercial articles, their constant development and change both with respect to composition and to use, make the determination of what constitutes an entirety a complex task. In the ab-

4. There was evidence in *Lafayette Electronics* that the leather cases were die cut with holes to expose the dial and controls of the imported radios, as in the present case. It is common knowledge that such a case would be useless except in connection with the particular model radio that it was designed for.

To agree with plaintiff's contention that it has presented new evidence would require us to impute a lack of that knowledge to the court when it decided the prior case, which we decline to do.

5. Chadwick-Miller Importers, Inc., et al. v. United States, 59 Cust.Ct. 529, C.D. 3221 (1967), at 535.

sence of a *clear-cut rule*, the courts have found it necessary to take a flexible approach. * * * [Emphasis added.]

Experience teaches that leather cases specially designed in size and shape and intended to fit a particular article are useless except for the particular article they were designed for. This would be true whether the leather case happens to be a binocular case,[6] camera case,[7] shaver case,[8] or a transistor radio case, as presented here.

If followed to its logical conclusion, plaintiff's argument would require this court to apply the principle of entireties to all leather cases specially designed (in shape, size, or both) for use with a particular article imported therein. Such proposition is not supported by any decision called to our attention by plaintiff, or discovered in our independent research. Yet the holding requested would, in our opinion, be contrary to congressional intent, and the long and consistent judicial interpretation of paragraph 1531 in the precedents relied upon by the court in *Lafayette Electronics*, the correctness of which we are not disposed to question in the absence of a clear showing of error. Cf. United States v. Damrak Trading Co., Inc., 43 CCPA 77, C.A.D. 611 (1956).

Although not involving leather cases for radios, a factual situation somewhat analogous to this case was presented in United Merchandising Corp. et al. v. United States, 48 Cust.Ct. 50, C.D. 2313 (1962), wherein battery operated radios and 45 volt dry cell batteries were held dutiable as separate entities, as classified, rather than as entireties, as claimed. The record disclosed that the batteries were used exclusively for the imported radios, and plaintiffs' witness had never been able to find any other use for the batteries, despite an effort to do so. The record further showed that the radios required the imported batteries in order to operate. In holding plaintiffs' claim that the radios and dry cell batteries constituted "entireties" to be untenable, this court stated:

It is apparent that, in the case at bar, the imported batteries, whether or not connected or joined to the imported radios, retain their identity as batteries.

See also Craig Panorama, Inc. v. United States, 59 Cust.Ct. 97, C.D. 3085 (1967).

In Silvine Importers, Inc., supra, in commenting upon United Merchandising Corp., supra, this court found (at page 367):

Even where all three elements of mechanical coupling, functional interplay, and unified packaging are present, we are not certain of having an entirety. * * * *The missing ingredient is the elusive concept of merger and subordination of identity.* * * * [Emphasis added.]

Consequently, even if the leather cases involved herein have no use separate from the imported radios, such cases nevertheless retain their individual identity (as cases), equally as much as do the batteries with which the radios were also imported.

Plaintiff contended (Brief, page 5) that the decisions in *Hensel, Camera Specialty,* and *Saunders,* relied upon by the court in *Lafayette Electronics,* "were based on findings that the leather cases had no appreciable effect on the operation of the articles with which they were imported, but served only as containers for the articles when not in use." We do not so view the holdings of those decisions. The records in *Hensel* and *Saunders* showed that the leather cases served both as protection for the binoculars and shavers, and also afforded a convenient

---

6. See United States v. Hensel, Bruckmann & Lorbacher, Inc., 22 CCPA 281, T.D. 47330.

7. See Camera Specialty Co., Inc. et al. v. United States, 37 Cust.Ct. 144, C.D. 1814. The court noted that plaintiffs' witness had testified that the leather camera cases had no other practical use than to carry the particular imported cameras.

8. See R. J. Saunders & Co., Inc. v. United States, 50 Cust.Ct. 299, Abstract 67720.

method of carrying those articles. In *Camera Specialty*, the evidence established that the camera was taken out of the leather case only when loading or unloading film (transistor radios are taken out of the leather cases when removing and inserting batteries); that the camera was left in the case when taking pictures, because the case protected the camera; and that it was handier for picture taking to have the camera in the case hanging from one's neck. See 37 Cust.Ct. at 146.

There is no basis for concluding that the above stated facts were disregarded by the courts in holding that the leather cases were not an entirety with the articles imported therewith, or that the decisions were based merely on the finding that the leather cases were containers from which the main article was removed when used. Obviously, the courts considered all the facts and then held that no entireties were present, because the cases and articles failed to form a new commercial entity, having a new name, character or use; but instead, held that the cases and articles retained their individual identities.

Finally, we noted plaintiff's assertion (Brief, page 7) that the leather cases involved herein are not those which Congress provided for in paragraph 1531. No authority was cited to support that contention, which contention we deem to be totally without merit. Further discussion of this point is unnecessary.

The record in this case, therefore, is not materially different from that of the prior one. We emphasize that plaintiff stated in its brief, page 4: "The merchandise and issues before the court in *Lafayette Electronics* were the same in all material respects as those in the case at bar." In point of fact, too, the plaintiffs are basically the same, or privies. It is fundamental that a former holding should not be disturbed in the absence of a clear and convincing showing of error. United States v. Dodge & Olcott, Inc., 47 CCPA 100, C.A.D. 737 (1960); United States v. Charles H. Demarest, Inc., 45 CCPA 109, C.A.D. 682 (1958). We find

that such error has not been shown, and *Lafayette Electronics* is *stare decisis* of the issues presented in this case.

The protest is overruled.

Judgment will be entered accordingly.

WATSON and MALETZ, JJ., concur.