**HANCOCK GROSS MFG., INC.**

v.

**UNITED STATES.**

C.D. 3459; Protest No. 64/12280–94569.

United States Customs Court,
Second Division.

May 29, 1968.

Allerton deC. Tompkins, New York City, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Bernard J. Babb, New York City, Trial Atty.), for defendant.

Before RAO, FORD, and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise, described on the invoice as #2100X, 4½″ Duo Strainers Knob Type (Full Size), was imported from Japan and entered at the port of Philadelphia on July 16, 1963. It was assessed with duty at 19 per centum ad valorem under paragraph 397 of the Tariffs and Trade, 91 Treas.Dec. 150, Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles not specially provided for, composed wholly or in chief

value of brass. It is claimed that the merchandise should not be classified as an entirety; that the strainer or basket portion, referred to hereinafter as the strainer-stopper, should be classified separately under paragraph 339 of said Tariff Act, as modified by Presidential Proclamation No. 3468, 97 Treas.Dec. 157, T.D. 55615, and Presidential Proclamation No. 3479, 97 Treas.Dec. 430, T.D. 55649, as household utensils in chief value of brass, at 10 per centum ad valorem. All other claims in the protest have been abandoned.

The pertinent provisions of the Tariff Act, as modified, are as follows:

Paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \* \*

Composed wholly or in chief value or iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (\* \* \*) ........................................ 19% ad val.

Paragraph 339, as modified by T.D. 55615 and 55649:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

\* \* \* \* \* \* \* \*

Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

Brass ..................................... 10% ad val.

A sample of the merchandise was received in evidence at the trial, the strainer-stopper being marked exhibit 1–A, the base exhibit 1–B, and the box in which they were imported exhibit 1–C. Exhibit 1–A consists of a sink strainer about 3 inches in diameter and 1 inch deep with a rod going through the center, which rod has a knob at the top and a rubber stopper at the bottom. This construction allows the item to act as a stopper to hold water in the sink or by a slight turn to permit the water to flow out, but keep solid particles from being washed down the drain and stopping up the sink. Exhibit 1–B is the base or body into which the strainer fits. It is 4½ inches in diameter across the top and is about 2½ inches deep. The box, exhibit 1–C, contains the words "Duo Basket Drain control; SINK STRAINER and STOPPER". There is also an illustration of a sink with the base or

body inserted therein and the strainer being removed from or placed in the base.

According to the record, exhibit 1–A is similar to the combined strainer-stopper which was exhibit 1 in Davies, Turner & Company v. United States, 55 Cust. Ct. 488, Abstract 69651, the record of which was incorporated herein. In that case, the strainer-stopper was held dutiable as a household utensil under paragraph 339, as modified, rather than as a brass article, not specially provided for, under paragraph 397, as modified.

The issue here is whether the strainer-stopper and the base, imported together, consist of an entirety for tariff purposes.

Plaintiff's first witness was Mrs. Helen Colleluori, who has been with Hancock Gross Manufacturing, Inc., for 20 years and has been engaged in purchasing and importing for 10 years. She testified that her firm handles plumbing specialties, garden accessories, garden hose, and various plumbing and household articles. It sells to hardware outlets, department stores, houseware and hardware stores, but sells very little to plumbing supply outlets and does not deal directly with contractors.

Plaintiff also called Jacob Globe, a partner of Globe Importing Co., who had testified in the previous case. His firm handles plumbing items, including merchandise such as exhibits 1–A and 1–B, and sells them all over the United States to manufacturers of plumbing supplies, large plumbing supply wholesalers, and plumbing specialty wholesalers.

Both witnesses testified that the base, exhibit 1–B is physically and permanently attached to a sink. The opening at the top is connected to the sink and the bottom is attached to the trap by means of a large nut. It requires tools or special skills to install or remove it, and once installed it cannot be salvaged but must be scrapped. The strainer-stopper, exhibit 1–A, on the other hand, is removable and can be picked up by

anyone. Mr. Globe testified also that the base is necessary for the completion of the sink, but the strainer-stopper is not.

Mrs. Colleluori had seen merchandise such as that involved herein used in sinks in kitchens and basements in homes in various parts of the United States. She said almost every home she had visited had this type of item because it is a standard thing today. She said that the strainer-stopper could be used with a base different from exhibit 1–B, as long as it had a 3½ inch inside opening. She stated that the base could also be used with different stoppers or with other strainers similar to exhibit 1–A. For instance, the strainer-stopper in the incorporated case, which has different shaped perforations, fits into exhibit 1–B. She added that a flat rubber stopper, such as exhibit 4 in the incorporated case, could be used to stop the flow of water. A rag or dish could also be used for that purpose. A separate strainer, called a drain protector, could be used for straining purposes. Mr. Globe testified that in fact the drainage of water from the sink could be stopped more efficiently with a suction stopper. In ⅓ of the places he had visited, the base was installed without a strainer-stopper, such as exhibit 1–A.

Both witnesses testified that their respective firms imported and sold the two items in combination and also separately, and that the most sales were of the strainer-stopper, exhibit 1–A, which is sold as a replacement. Mr. Globe said that the strainer-stopper is sold alone three times as much as the combination and that the base, exhibit 1–B, is sold alone only about one quarter of the number of times that the combination is. Mrs. Colleluori said that when both exhibit 1–A and exhibit 1–B are ordered, the number 2100X is used and when it is sold as item 2100X, both the strainer-stopper and the base are included. The strainer-stopper alone is ordered more frequently, but not as item 2100X.

When asked *if her firm ever ordered ex-hibit 1–B separately, she testified*:

> Yes, we sell it separately, sir. We have broken up the sets.

She also testified that the combination was sold in 1963 at 90 and 98 cents a unit; the strainer-stopper alone at 40 and 45 cents each, and the base at the difference, 35 cents [sic].

Subject to a ruling by the second division as to admissibility of the evidence, the witnesses were permitted to testify that the reason for selling exhibits 1–A and 1–B in combination was to increase sales of the strainer-stopper, exhibit 1–A, as a replacement.

Plaintiff claims that the facts of record establish that the merchandise involved here is not an entirety and that the strainer-stopper and the base should be classified separately. Defendant contends that the merchandise is an entirety for tariff purposes and was properly so classified by the collector.

The doctrine of entireties has been stated in various ways and a number of criteria have been applied in the decided cases.

Statements often quoted are:

> * * * if an importer brings into the country, at the same time, certain parts which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately. [Altman & Co. v. United States, 13 Ct.Cust.Appls. 315, 318, T.D. 41232.]

> * * * If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent. [Donalds Ltd., Inc. v. United States, 32 Cust.Ct. 310, 315, C.D. 1619.]

This court has recently pointed out that the difficulty lies in the application of the principle to particular merchandise. Chadwick-Miller Importers, Inc., et al. v. United States, 59 Cust.Ct. —, C.D. 3221. After discussing many cases, it concluded:

> While it is difficult to draw generalizations, the cases cited indicate that where all of the entities in a combination are complete in themselves and are capable of separate use, the unit is not an entirety, but that where at least one of the entities has no separate commercial value or separate use, the combination is an entirety.

The court there held that a combination consisting of a glass dish, a spoon, and a holder was an entirety, since the holder had no commercial value and no use by itself, and when the other articles were added, the unit became a useful article for the service of jam or condiments, the purpose for which it was intended.

In another recent case, Silvine Importers, Inc. v. United States, 57 Cust.Ct. 362, C.D. 2821, this court held that electric brewmasters were separate entities from detachable electric cords since the cords could be used with other appli-

ances and their identity and function were not lost in a new entity. In the course of its opinion, the court noted that even where the elements of mechanical coupling, functional interplay, and unified packaging were present, the merchandise might not be an entirety; that the missing ingredient might be the elusive concept of merger and subordination of identity.

In Miniature Fashions, Inc. v. United States, 54 CCPA ——, C.A.D. 894, the court held that cabana sets, consisting of shirts and shorts, were entireties, on the ground that they were designed as a unit, matched as to color, print, and fabric, imported and sold as a unit, and when the parts were separated and returned for credit, the parts were either given to charity or placed in the wastebasket. The court concluded that the parts had no commercial value except when joined as a unit. In the course of the opinion, the court said:

From the authorities discussed in the opinions below and the argument presented here, it is apparent that the doctrine of entireties is to be used as an aid to ascertain proper classification. Where Congress has not created an express classification to govern, the problem is one of ascertaining the most suitable classification. The result reached in Lang appears to place the doctrine of entireties in its proper perspective. Thus whatever criteria from the doctrine of entireties is applied, e. g., "function," "use," "individual entities," "newly created entity," "intent," "design," or "commercial unit," such criteria may not circumvent the intent of Congress.

In United States v. Altray Company, 54 CCPA ——, C.A.D. 919, the merchandise consisted of miniature artificial Christmas trees, each about 2 inches high and adhesively affixed at the base to a foil-wrapped chocolate wafer. The court pointed out that the mere fact that articles may be bought, sold, and used together in sets, does not require that they be regarded as entireties for tariff purposes, and stated:

Mere juxtaposition at importation or in trade does not preclude further analysis. The difficulty is in the selection of appropriate standards for that analysis. It is suggested that the dispositive consideration is whether the identity of the individual components has been submerged. However, it seems to us that where the design of the combination in issue by its very nature contemplates its disassembly and the utilization of the constituents in the very manner for which they are otherwise used, and when articles very similar to those constituents are on sale as separate items, the combination is not, in the sense of the customs law, an entirety. To hold otherwise would only facilitate subversion of the congressional intent. The doctrine of entireties, as we have recently pointed out, may never be so used. * * *

In the instant case, the two articles are designed to be used together but they are not physically joined to each other. The strainer-stopper rests on the base but it is not affixed to it, is designed to be removable, and is in fact often removed in use. The strainer-stopper when imported alone has been held to be a household utensil, classifiable as such under paragraph 339, supra. The record establishes that the base becomes a permanent and necessary part of the sink to which it is attached. The base can be used without the strainer-stopper involved here, with other types of stoppers and strainers. While the strainer-stopper must rest on a base in order to be utilized, the base need not be the one before the court, but may be one of a different type as long as it has a 3½ inch opening.

Each of the articles performs its own separate function whether used together or separately. The base permanently joins the sink outlet to the plumbing waste outlet. The strainer-stopper op-

erates either as a strainer or as a stopper when used with appropriate openings just like other strainers and stoppers.

Each of the articles is bought and sold separately as well as in combination. According to Mrs. Colleluori, even when the two articles are imported in combination, the set is sometimes broken up and each item sold separately. Many more of the strainer-stoppers are bought and sold than the combination or the base alone. Each of the items has a separate commercial value. The items have not been merged to form a new commercial entity nor has the identity of either been subordinated to that of the combination. In our view, the most suitable classification for the strainer-stopper is as a household utensil and not as part of an entirety with the base, which, after installation, becomes a permanent part of a sink.

In reaching this conclusion, we have given due weight to the factual evidence of record. We are in accord with the trial judge that the proffered testimony as to the reasons why the articles were sold in a certain fashion is not properly admissible. It is, therefore, stricken from the record.

We conclude that the merchandise involved herein consists of two separate tariff entities, a strainer-stopper and a base, and is not an entirety. The strainer-stopper should have been separately assessed with duty at 10 per centum ad valorem under paragraph 339 of the Tariff Act of 1930, as modified, as a household utensil in chief value of brass. Since the merchandise was appraised on the basis of the strainer-stopper and the base constituting an entirety, no separate values for the strainer-stoppers and the bases were returned by the appraiser. Accordingly, the appraisement herein is invalid and void, and the liquidation of the entry based thereon is premature and a nullity. It follows that the protest is likewise premature and must be dismissed. Pursuant to 28 U.S.C. § 2636 (d), the matter is remanded for further proceedings to a single judge sitting in reappraisement to determine the proper dutiable values of the strainer-stoppers and the bases in the manner prescribed by law.

Judgment will be entered accordingly.

RAO, C. J., and FORD, J., concur.