(C.D. 4293)

THE WESTBRASS COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided November 4, 1971)

*Stein & Shostak* (*Arthur Schwimmer* and *Leonard M. Fertman* of counsel) for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Herbert P. Larsen, Molly Strum, Velta Melnbrencis* and *Michael M. Hunter,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: The merchandise in these seven consolidated protests consists of certain plumbing articles as follows:

"Duo" sink strainers with insert baskets and flat sink strainers [1]
Replacement insert baskets for the "Duo" strainers
Laundry tray plugs
Shower heads [2]
Shower drains

---

[1] The stainless steel flat strainers and stainless steel "Duo" basket strainers in entry No. 68–252175 are not included in protest 68/42292, nor in any of the other consolidated protests.

[2] The brass shower heads in entry 68–223738 are not included in protest 68/31566, nor in any of the other consolidated protests.

The above enumerated articles, imported from Japan during the years 1965, 1967 and 1968 and entered at the port of Los Angeles, were classified by the district director under the basket provisions in the Tariff Schedules of the United States (TSUS) for articles of metal based upon the component material of chief value. Accordingly, merchandise covered by protests 68/54255, 68/54258, 68/31566, and 68/32076 was classified under item 657.20, TSUS, as articles of iron or steel, not coated or plated with precious metal, and assessed with duty at the rates of 19 or 17 per centum ad valorem depending upon the date of entry; and articles covered by protests 68/54257, 68/42292, and 67/8241 were classified under item 657.35, TSUS, as articles of copper, not coated or plated with precious metal, and assessed with duty at the rates of 1.275 cents per pound plus 15 per centum ad valorem, or at 1 cent per pound plus 13.5 per centum ad valorem, depending upon the date of entry.

Plaintiff claims that all of the merchandise is classifiable under the superior heading: "Articles not specially provided for of a type used for household * * * use; toilet and sanitary wares; all the foregoing and parts thereof, of metal", which precedes items 653.60 through 654.20, TSUS. The steel items classified under item 657.20 are claimed to be properly dutiable under the subordinate heading in item 653.95 for articles of iron or steel at the rates of 17 or 15 per centum ad valorem, depending upon the date of entry. The copper items classified under item 657.35 are claimed to be properly dutiable under the subordinate heading in item 654.00 for articles of brass at the rates of 10 or 9 per centum ad valorem, depending upon the date of entry.

Alternatively, plaintiff claims that the strainers (and also the rubber stoppers in the laundry tray plugs) are not entireties with the bases with which they were imported, and that consequently the appraisement and liquidation of that merchandise as entireties is void.[3]

### STATUTES INVOLVED

Tariff Schedules of the United States:

Classified under:

Schedule 6, Part 3, Subpart G:

> Articles of iron or steel, not coated
> or plated with precious metal:
> > Cast-iron articles, not alloyed:
> >
> > &ast;  &ast;  &ast;  &ast; .  &ast;  &ast;  &ast;
> >
> > Other articles:

* * *              Of tin plate_____              * * *

---

[3] Other claims were abandoned at the trial, and are hereby dismissed.

| | | |
|---|---|---|
| 657.20 | Other _____ | 19% ad val.[4] |
| | Articles of copper, not coated or plated with precious metal: | |
| * * * | Of copper, other than alloys of copper; of nickel silver or of cupranickel | * * * |
| 657.35 | Other _____ | 1.275¢ per lb. +15% ad val.[5] |

Claimed under:

Schedule 6, Part 3, Subpart F:

Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:

    *    *    *    *    *    *    *

Articles, wares, and parts, of base metal, not coated or plated with precious metal:
Of iron or steel:
Not enameled or glazed with vitreous glasses:

| | | |
|---|---|---|
| * * * | Cast articles, coated____ | * * * |
| * * * | Of tin plate_____ | * * * |
| 653.95 | Other _____ | 17% ad val.[6] |

    *    *    *    *    *    *    *

Of copper:

| | | |
|---|---|---|
| 654.00 | Of brass_____ | 10% ad val.[7] |

### THE RECORD

The record comprises the testimony of two witnesses[8] called by plaintiff, and thirteen exhibits introduced by plaintiff. Additionally, upon plaintiff's motion, the records in two previously decided cases were incorporated: *Hancock Gross Mfg., Inc.* v. *United States*, 60 Cust. Ct. 558, C.D. 3459, 285 F. Supp. 168 (1968); and *Davies, Turner & Company* v. *United States*, 55 Cust. Ct. 488, Abstract 69651 (1965).

"Duo" sink strainers are used in the household. The strainer base becomes a permanent part of the sink and directs water in the sink into the outlet drain pipe. The basket insert rests within the strainer base and serves a dual function: it acts as a stopper to retain water in the sink; and it prevents garbage or other waste material from entering the drain line. It appears that the basket insert may be easily removed from the strainer base for cleaning or other purposes. Further, the

---

[4] Rate reduced by T.D. 68–9 to 17% ad valorem, effective January 1, 1968.

[5] Rate reduced by T.D. 68–9 to 1¢ per lb.+13.5% ad valorem, effective January 1, 1968.

[6] Rate reduced by T.D. 68–9 to 15% ad valorem, effective January 1, 1968.

[7] Rate reduced by T.D. 68–9 to 9% ad valorem effective January 1, 1968.

[8] The witnesses were: Sanford H. Grosberg, the principal partner in the plaintiff company and its sales manager; and Alois Munch, a supervisory import specialist at the port of Los Angeles.

basket insert may be purchased separately from the base; and is a readily replaceable article.

The flat strainers, as implied by their name, are flat rather than shaped like a basket. They, too, serve to prevent waste materials from entering the sink's drain line. However, the flat strainers are not designed to retain water in the sink as are the strainer-stoppers. The base used with the flat strainer is permanently attached to the sink and outlet drain, but the flat strainer itself is easily removed from the base. Like the strainer-stopper, the flat strainers may be purchased separately from the bases.

The shower drains are designed to cover the opening to the drain line in the floor of a shower stall. A chrome-plated cover with holes on the shower drain is placed flush with the shower floor tile. The shower drains permit water to flow out of the shower through a drainpipe, but prevent foreign objects from entering the plumbing system.

The shower heads simply serve to diffuse water over a person taking a shower bath. They are installed on a piece of chrome-plated pipe referred to as a shower arm, which in turn, is connected to a water pipe in the wall.

The laundry tray plugs consist of a metal base, which becomes a permanent part of the laundry tray and directs water into the drain line, and a rubber stopper with a metal ring which serves to retain water in the laundry tray until removed from the base. The rubber stopper may be purchased separately from the metal base.

## THE INCORPORATED CASES

In *Davies, Turner & Company*, sink strainers without bases, similar in all material respect to those in the present case, were held properly dutiable under the provision for "household utensils" in paragraph 339 of the Tariff Act of 1930, as modified, rather than under the "basket" provision for base metal articles in paragraph 397 of said tariff act, as modified. There, the dispute was whether the strainers were a part of the fixtures of a home (sinks) or whether such strainers were household or kitchen utensils in the tariff sense. The court rejected the Government's argument that the strainers were part of the realty.

In *Hancock Gross Mfg., Inc.*, sink strainers and bases imported together, similar in all material respects to those involved herein, were held to have been improperly appraised and classified as entireties under paragraph 397 of the Tariff Act of 1930, as modified. The opinion stated (60 Cust. Ct. at 565):

> We conclude that the merchandise involved herein consists of two separate tariff entities, a strainer-stopper and a base, and is not an entirety. * * * Since the merchandise was appraised on the basis of the strainer-stopper and the base constituting an

entirety, no separate values for the strainer-stoppers and the bases were returned by the appraiser. Accordingly, the appraisement herein is invalid and void, and the liquidation of the entry based thereon is premature and a nullity. It follows that the protest is likewise premature and must be dismissed. Pursuant to 28 U.S.C., section 2636(d), the matter is remanded for further proceedings to a single judge sitting in reappraisement to determine the proper dutiable values of the strainer-stoppers and the bases in the manner prescribed by law.

## STRAINERS AND BASES—ENTIRETIES

It appears from the official papers that the strainers and bases imported together were appraised as entireties. Both parties agree that following the court's decision in *Hancock Gross*, the strainers and bases are separate articles rather than entireties and consequently the appraisements are void. In accordance with *Hancock Gross*, protests 68/54255, 68/31566, 68/32076, 68/54258, and 67/8241 are dismissed and remanded to a single judge to determine the separate values of the strainers and bases pursuant to 28 U.S.C. § 2636(d). Inasmuch as we dismiss and remand the foregoing protests, it becomes unnecessary to determine the merits of plaintiff's classification claims relative to the bases. However, respecting the strainers, defendant now concedes under the authority of the incorporated cases the correctness of plaintiff's claims. Upon the record presented and the concession thus made by defendant, we hold that the replacement baskets (represented by exhibit 6), imported without bases, in protest 68/32076 are properly dutiable at the rate of 17 per centum ad valorem under the provision in item 653.95, TSUS, for household or kitchen articles of steel. To that extent protest 68/32076 is sustained.

## LAUNDRY TRAY PLUGS

It also appears from the official papers that the metal base and rubber stopper comprising the laundry tray plug (represented by exhibit 8) were appraised as an entirety. The record establishes that the base and rubber stopper constitute two separate commercial entities. Each article performs its own separate function, is sold separately, has a separate commercial value, and the identity of the two articles does not merge. The base is permanently installed in the laundry tray to provide drainage into the plumbing system and also to provide protection against the loss of objects dropped into the laundry tray. The rubber stopper, as its name implies, simply retains water in the laundry tray and is frequently removed from the base. Clearly, then, the identity of the rubber stopper is not subordinated to that of the metal base, and the two components remain separate articles of commerce. Following the rationale of our holding in *Hancock Gross*, the appraisements of the

laundry tray plugs are void, and protests 68/32076 and 67/8241 are dismissed and remanded to a single judge for a determination of the separate values of the base and rubber stopper pursuant to 28 U.S.C. § 2636(d).

## SHOWER HEADS AND DRAINS

Plaintiff contends that the shower heads and drains are shower fixtures or parts thereof, and that such fixtures or parts are "sanitary ware" or parts thereof for tariff purposes. Defendant admits that the shower heads and drains are "plumbing supplies or plumbing fixtures", but insists that they are not sanitary ware or parts thereof as encompassed by the tariff schedules.

In the tariff schedules, metal sanitary ware and parts are covered by schedule 6, part 3 (items 653.60 through 654.20), while ceramic sanitary ware and parts are provided for in schedule 5, part 2 (item 535.31). The Government argues that metal sanitary ware consists of enameled or glazed iron or steel articles, such as bathtubs, washbowls, toilet bowls and tanks, sinks, bidets, etc. That argument is predicated upon the language in paragraph 339 of the Tariff Act of 1930 covering articles "composed of iron or steel and enameled or glazed with vitreous glasses". However, similar language is not contained in the superior heading to items 653.60 through 654.20. Therefore, defendant's restrictive interpretation of the term "sanitary ware", which is not based upon the present statutory language, is without merit.

Although the provisions in schedule 5 for ceramic sanitary ware are not applicable to the metal articles involved herein, we have noted that in item 535.31 Congress expressly included "plumbing fixtures and bathroom accessories" in the term "sanitary ware". Although the superior heading to items 653.60 through 654.20 does not expressly state "including plumbing fixtures and bathroom accessories" after the term "sanitary ware", as in item 535.31, we are of the opinion that in such respect no distinction was intended by Congress between the provisions for sanitary ware in schedules 5 and 6. Moreover, defendant does not assert that the term "sanitary ware" in schedule 6 excludes plumbing fixtures and bathroom accessories. Nevertheless, defendant urges that showers and shower fixtures are not embraced by the provision for sanitary ware in schedule 6.

The term "sanitary ware" is not defined in the tariff schedules, nor do the *Tariff Classification Study Explanatory and Background Materials* provide any enlightenment as to the scope of the term. Hence, the dispute must be resolved in accordance with common meaning.

In *Webster's Third New International Dictionary of the English Language* (1966), the term "sanitary ware" is defined as follows:

> sanitary ware *n:* plumbing articles (as sinks, baths, lavatories, *showers*, toilet bowls) [Emphasis added.]

Inasmuch as showers [9] are within the common meaning of the term "sanitary ware", we hold that shower heads and drains are within the purview of the provision for sanitary ware or parts thereof in the superior heading to items 653.60 through 654.20, TSUS.

Finally, since defendant concedes in its brief that the shower heads and drains were made of brass, plaintiff's claim in protests 67/8241, 68/42292, and 68/54257 that the shower heads and drains are properly dutiable at the rates of 10 or 9 per centum ad valorem, depending upon the date of entry, under item 654.00, TSUS, is sustained.

Judgment will be entered accordingly.

(C.D. 4294)

---

[9] According to *Webster's Third New International Dictionary of the English Language* (1966) a "shower bath" is: "the apparatus including a finely perforated nozzle that provides a shower bath".